Argued September 19; affirmed October 23; rehearing denied
November 20, 1934

# HOME MORTGAGE CO. *v.* SITKA SPRUCE PULP & PAPER CO. ET AL.
### (36 P. (2d) 1038)

*L. A. Liljeqvist,* of Marshfield (Liljeqvist & Swanton and Joseph A. McKeown, all of Marshfield, on the brief), for appellants.

*W. U. Douglas* and *John D. Goss,* both of Marshfield; *Ralph Cake* and *Lamar Tooze,* both of Portland; *Bernard C. Flaxel,* of North Bend, and *Chris Boesen,* of Marshfield (W. U. Douglas, of Marshfield; Cake & Cake and Jaureguy & Tooze, all of Portland; Goss, Murphy & Skipworth, of Marshfield; Bernard C. Flaxel, of North Bend; and J. B. Bedingfield, of Marshfield, on the brief), for respondents.

BAILEY, J. On March 30, 1934, the defendants Sitka Spruce Pulp & Paper Company, Fidelity Warehouse Corporation and Anglo-California National Bank of San Francisco, all corporations, filed a notice of appeal from numerous orders and decrees entered by the circuit court in this proceeding. These are referred to in the notice of appeal as decrees *in re* priorities of secured creditors entered February 17, 1934; decree and order of sale entered August 8, 1933; amended decree and order of sale entered August 8, 1933; further amendment of said decree and order of sale entered January 6, 1934; and order appointing receiver entered August 3, 1932. The defendants also gave notice of appeal in open court from the order confirming the sale, entered April 2, 1934.

For a better understanding of the questions raised on the appeal it is necessary to refer at some length to the numerous pleadings, orders, decrees and other proceedings in this cause.

On July 21, 1932, the plaintiff, Home Mortgage Company, a corporation, instituted a suit against the three appealing defendants and others, to recover against the defendant Sitka Spruce Pulp & Paper Company, hereinafter to be mentioned as the Sitka company, approximately $4,000 on 28 assigned claims for labor performed by the assignors of such claims for and on behalf of the Sitka company, and to foreclose laborers' liens on lumber and pulpwood at the sawmill of the Sitka company in Coos county, Oregon. Each of these assigned claims constituted a separate cause of suit. As a twenty-ninth cause of suit the plaintiff realleged "all the allegations contained in its first to twenty-eighth, inclusive, causes of suit heretofore set forth herein". In the twenty-ninth cause of suit the plain-

tiff alleged that there were pending at least sixteen actions at law against the Sitka company for the collection of various sums owing by that defendant, and that in nine of such actions writs of attachment had been issued and levied on the property of said defendant, in the sum of approximately $56,000; that notices of labor liens had been filed by at least 110 different claimants, for wages owing by the Sitka company; that judgments remained unpaid and unsatisfied, against the said defendant, in the sum of over $11,000; that the sawmill and manufacturing plant of the Sitka company were in the custody of the sheriff of Coos county, Oregon; that the plaintiff was informed and believed that the total of such liabilities was between $600,000 and $700,000, which sum was largely in excess of the value of its assets; and that the Sitka company was insolvent and "unable to pay its current liabilities for several months last past". The plaintiff further alleged that part of the property of the Sitka company consisted of lumber and other products located at its mill; that such property was piled outside, exposed to sun and weather and a large part of it was cracking, warping, shrinking, and becoming unsalable; that it was "constantly deteriorating in value" and unprotected from damage by fire; and that plaintiff was informed and believed that the said defendant carried thereon no fire insurance.

It is further averred that because of the inferior quality and deteriorated condition of the lumber upon which plaintiff is seeking to foreclose its various liens, and due to the amount of money owing on many other lien claims, the lumber would not at a sale bring a sufficient sum of money to discharge the various claims against the Sitka company; that plaintiff and other

508

claimants would have to realize a large part of their claims from other assets of the Sitka company; and that it is to the interest of the plaintiff and other creditors and to the stockholders that all the assets of the Sitka company be taken into the custody of the court "and preserved and cared for by this court so that all the rights of the creditors and stockholders of said defendant will be protected". As a concluding paragraph it is alleged that a receiver should be appointed.

The prayer asks for judgment in favor of the plaintiff and against the Sitka company on its first twenty-eight causes of suit, and for the foreclosure of the liens filed with reference thereto, and requests that a receiver be appointed to take immediate possession of the property "for the purpose of conserving each and all of said property and selling or disposing of the same upon the orders of this court as they may hereinafter be made".

On July 22, 1932, summons and complaint were served on the Sitka company in Coos county, Oregon. On July 26, there was served on the Sitka company by the sheriff of Coos county a motion by counsel for plaintiff for the appointment of a receiver to take charge of all the assets and property of said corporation. Attached to this motion was an affidavit in which it was stated that the Sitka company was insolvent and unable to meet its current liabilities and expenses; that it was indebted for taxes; that its liabilities were between $600,000 and $700,000; and that its assets were wholly insufficient to meet its liabilities. This affidavit also referred to the various judgments against the corporation, attachments, etc., as hereinbefore mentioned in reference to the twenty-ninth cause of suit. Accompanying the motion and af-

fidavit was a notice that the plaintiff would apply to the court on July 30, 1932, at a designated hour, for the appointment of such receiver.

The hearing on this motion was postponed until August 1. After the hearing on that date the court took the matter under advisement and on August 3 entered an order in which it recited that the court had "determined that a receiver should be appointed to take charge of all the property of each, all and every kind and nature of said defendant", Sitka company, "for the purpose of conserving each and all of said property and selling or disposing of the same upon the orders of the court as they may hereafter be made". It was then ordered that Mr. R. T. Bourns be appointed such receiver. On the same day the bond of the receiver was approved by the court and filed, as well as his oath of office. At the hearing the Sitka company was represented by counsel and "various judgment creditors" appeared by their attorneys. The record shows no objection by the attorney for the Sitka company to the appointment of a receiver, and no counter-affidavit was filed by that company.

The defendant Dennis McCarthy on July 30, 1932, filed an answer and cross-complaint in the proceedings, consisting of forty-three causes of suit, each based upon an assignment of claim for labor performed for the defendant Sitka company, in which cross-complaint McCarthy asked for judgment against the Sitka company for something in excess of $3,000, and for the foreclosure of laborers' liens filed by the assignors.

On August 1, 1932, the defendant Sitka company by the same attorneys who represent it on this appeal filed a demurrer to "each and every one of the twenty-eight alleged causes of suit" contained in the complaint,

on the ground that each of said causes of suit failed to state sufficient facts, and on that date the same defendant by the same counsel filed a similar demurrer to the forty-three causes of suit contained in the cross-complaint of Dennis McCarthy.

The defendant Annie Smith on August 4 filed an answer and cross-complaint containing thirty-one causes of suit on a like number of assignments of laborers' claims for approximately $2,000, and for the foreclosure of her assigned laborers' liens. On August 19 attorneys for the Sitka company filed a demurrer similar to the others above mentioned, to these thirty-one separate causes of suit.

On September 2 these three separate demurrers came on for hearing, and, according to the order of the court entered of that date, the defendant's sole objection to the first twenty-eight causes of suit in plaintiff's complaint and the cross-complaints of Dennis McCarthy and Annie Smith was the failure to allege therein that the liens therein referred to were verified. Whereupon, with the consent of the court and without any apparent objection on the part of counsel for the Sitka company, these pleadings were amended by interlineation in the proper places of the words "and verified" or the single word "verified". The demurrer to the twenty-eight causes of suit in the complaint appears to have been considered by the court and the interested parties as not referring to the twenty-ninth cause, which had to do with the appointment of a receiver.

In September, 1932, a petition was filed by the receiver to sell some of the lumber belonging to the defendant Sitka company, and on September 29 a hearing was had before the court, at which time the attorney

for the three parties who are now appellants appeared and stated that he was in court to protect their interests, whereupon the following colloquy occurred:

"The Court: You are not raising any question as to the validity of the appointment of the receiver?

"Mr. Liljeqvist: No. I haven't attempted to challenge that."

Thereafter, orders were made authorizing the receiver to sell the lumber. At this point, although not in chronological sequence, it is well to refer to a number of orders authorizing the receiver to sell personal property other than the lumber above mentioned. The orders were as follows: November 19, 1932, for the sale of 600 sheets of pulp usually called screenings; April 17, 1933, to sell 2,000 red brick at a net price of $20 per thousand; 15 tons of hydrate of lime, also boiler tubes; May 31, 1933, order to sell all felled and down timber on certain described lands; June 21, 1933, order for the sale of machine described as "hog" for $300; June 21, 1933, order to sell 15 tons of lime hydrate at $11.50 per ton; August 3, 1933, to sell a part of set-works of re-saw for $50, and to lease a lumber carrier at $100 a month; September 6, 1933, order for the sale of miscellaneous items, including transfer chains, iron pipes, circular saws, etc., for $125; September 6, 1933, order for the sale of 550 carrier blocks; September 8, 1933, order for the sale of miscellaneous personal property consisting of conveyor chains, pulleys, etc., for $125, and an old planer for $200; October 9, 1933, order to sell two small steam engines; and October 21, 1933, an order for the sale of 250 carrier blocks for a total of $17.50. No objections seem to have been made to any of these sales, and it does not appear that the plaintiff in the original complaint or the cross-complainants, Dennis McCarthy and Annie Smith, had thereon any lien.

The Anglo-California National Bank, to be mentioned hereafter as the bank, on November 1, 1932, filed an amended answer to plaintiff's complaint, in which answer it denied each and every allegation contained in the complaint except as thereafter "specifically admitted, qualified or stated". This answer contained a prayer for judgment against the Sitka company in the following sums, to-wit: (a) $16,034, (b) $15,561.65, (c) $10,000, (d) $8,000, (e) $12,000, and (f) $7,500. It further prayed for the foreclosure of certain liens held by the bank and represented by warehouse receipts on lumber owned by the Sitka company.

On November 1 the defendant Fidelity Warehouse Corporation, hereinafter to be referred to as the warehouse corporation, filed an answer and cross-complaint which included a general denial similar to that of the bank. It asked in its prayer to be declared to have a prior lien in the sum of $3,031.44 "upon said warehoused lumber and the whole thereof described in said warehouse receipts as hereinbefore alleged".

Answers were also filed by these two defendants against the answers and cross-complaints of Annie Smith and Dennis McCarthy. The receiver was made a party defendant and filed replies to the answers of the bank and the warehouse corporation.

The receiver on November 10, 1932, filed a report, which begins as follows: "Now comes the receiver heretofore appointed herein and in compliance with § 32-704 of the Oregon Code reports to the court the names of the laborers and employes of the defendant" Sitka company as shown by the books of that company, during certain designated months. Later in the same month, November 28, the receiver filed an amended report, also stated to be made in compliance

with § 32-704, Oregon Code 1930, relative to the amounts due laborers and employees.

On November 23 a petition was filed for an order fixing time in which creditors' claims might be presented to the receiver, and on the same date an order was made requiring all creditors of the Sitka company to file their claims on or before the first day of March, 1933, and requiring the receiver to give notice by four weeks' publication, of the time within which claims should be filed. Such notice was given, and prior to March 1, 1933, claims were filed aggregating $749,-893.30, including the claim of the bank on promissory notes in excess of $371,000.

December 20, 1932, as no further appearance had been made by the Sitka company, defendant, orders of default were entered against it for failure to plead further or answer plaintiff's complaint and the cross-complaints of the defendants Smith and McCarthy. In the order as to the plaintiff's complaint it was further stated, "that in so far as the said defendant Sitka Spruce Pulp & Paper Company is concerned the said complaint is true and confessed".

The receiver in his report to the court on February 6, 1933, called attention to the fact that the sawmill and pulp mill of the Sitka company were depreciating in the following particulars: some of the docks and wharves were in danger of falling or collapsing, due to the fact that the pilings underneath them were being eaten by teredos and other insects; a part of the pulp mill building was overloaded and breaking down; various other parts of the buildings required the expenditure of money in order properly to protect them; and the receiver had no funds with which to make repairs and alterations.

On April 20, 1933, a so-called decree was entered by the court, in which it was adjudged that the plaintiff was entitled to recover against the Sitka company the sum of $4,031.32 in addition to its costs, and that Annie Smith and Dennis McCarthy, cross-complainants, should recover $1,929.26 and $3,222.38, respectively, to which costs were to be added. By that decree the bank was awarded in excess of $69,000, with interest and costs, and the warehouse corporation was to recover $1,041.81. The plaintiff and cross-complainants were given a first lien on certain lumber described; the bank, a lien thereon subsequent to that of the cross-complainants; and the warehouse corporation's lien thereon was made subject to those of the laborers and the bank. The decree concluded by ordering the receiver to retain, until the further order of the court, all moneys which had already been received or which might thereafter be received by him from the sale of the lumber.

No question is here presented concerning the correctness of the decree as to the amounts allowed the plaintiff and the cross-complainants, Dennis McCarthy and Annie Smith. This decree, however, did not attempt to pass upon the facts alleged in the twenty-ninth cause of suit set forth in the complaint.

On May 3, 1933, the receiver filed a report covering the period of his receivership from August 3, 1932, up to and including March 31, 1933, showing the property of the Sitka company of which he had been able to take possession as such receiver, and his collections, sales, lists of liabilities, etc. In this report, which is comprehensive and voluminous, are included description of the real property of the Sitka company by metes and bounds, the amount of taxes against the

property, judgments rendered, suits, actions and at-tachments, and many other matters relating to the receivership. Under the heading "property of Sitka company not on inventory nor in possession of the receiver" are mentioned a few items of personal property.

The first petition for the sale of real property was filed by the receiver on June 5, 1933, and the judgment lien creditors and those creditors having liens by at-tachment joined with the receiver in asking the court to grant the petition. One of such judgment creditors was the Coos Bay Iron Works, represented by the same counsel appearing for the appellants both in the circuit court and here. In the petition the receiver re-quested an order of the court authorizing the sale of the real property and the remainder of the per-sonal property belonging to the Sitka company. It was represented in the petition that all the real prop-erty belonging to that defendant, with the exception of a few isolated tracts, "together with the rights and easements for water mains, pipes and lines, dams and reservoirs" belonged to and was "a part and parcel of the sawmill plant and pulp mill plant of the said defendant". The report of the receiver for May 3, 1933, was referred to for a description of the real property, which description was by reference incorpo-rated in the said petition, along with an approximate description of the improvements thereon, consisting of buildings, wharves, tracks and equipment, as set forth in the appraisal report of the Standard Ap-praisal Company filed as a supplement to the re-ceiver's report of May 3.

The petition went on to state that in addition to the real property "appurtenant to and belonging to said

sawmill and pulp mill" there were certain articles of personal property "in the way of hoists or cranes, lumber carriers, and such, necessary to the operation of said plants". Attention was directed to the fact that there had been, at the time of the receiver's appointment, approximately 7,000,000 feet of lumber in the yards adjacent to the sawmill; that the lumber was practically all subject to liens for labor and claims of the bank and the warehouse corporation, approximating the sum of $80,000; that about $24,500 had been realized from the sale of said lumber; and that after the receivership expenses in connection therewith were paid and the receipts from the sale of lumber applied on the liens against it there would remain approximately $60,000 owing to the lien claimants. Mention was also made of the fact that the court had theretofore made an order requiring all persons having claims against the Sitka company to present them to the receiver on or before March 1, 1933; and that pursuant thereto claims approximating $710,000 had been so presented. Attention was then directed to taxes owing to Coos county, amounting to about $26,000, which together with judgment liens exceeded $80,000, and to the total liabilities of the Sitka company, approximately $850,000.

The receiver then referred to certain accounts due to the Sitka company, amounting to about $14,000, which were declared to be of problematic value, and in addition thereto the statement was made that there was apparently owing on 1,840 shares of preferred stock the sum of $184,000, of doubtful collectibility. The report further stated that the property of the Sitka company was of insufficient value to satisfy and discharge the costs and expenses of the receivership,

the taxes, judgments and liens and the claims of unsecured creditors; that the receiver had not operated the property because of insufficient funds; that the same could not be operated without the expenditure of several thousand dollars for repairs; and that no funds were forthcoming for that purpose. Mention was again made of the physical condition of the plants, the fact that they were rapidly deteriorating; and that there was little opportunity to protect the same from fire, for lack of available fire-fighting equipment and because of the ever-present fire hazard; and that no money was available to pay insurance premiums. The court was then asked to fix a time for hearing the receiver's petition for the sale of all the property of the Sitka company.

On June 13, 1933, a hearing was had before the court on the petition last above mentioned, at which hearing counsel for the appellants herein was present and no objection was made by him to the sale. During the hearing the court remarked that judgment lien holders might bid at the sale.

The court, on June 21, ordered the receiver to distribute the money realized from the sale of the lumber, less receivership expenses, to the plaintiff, the two cross-complainants and the bank, of which amount $7,500 was ordered distributed to the bank. After this distribution there remained due the plaintiff a balance of $947.25; to the cross-complainant Annie Smith, $440.72; to Dennis McCarthy, $679.74; and between $50,000 and $60,000 due to the bank, of the amount awarded it by the court in its decree of April 20, 1933.

A supplemental petition was filed by the receiver on July 10, 1933, in which he stated that the assets of

the Sitka company did not exceed 50 per cent of the indebtedness owed by it; that there were judgments against that company as described in the original petition of over $30,000; that since it was presented additional judgments had been entered in the sum of $24,000, all of which constituted liens upon the real and personal property of the Sitka company; and that in addition thereto there were claims by general creditors in excess of $710,000, over $25,000 due in taxes, and a judgment in favor of the bank of at least $60,000. This document further recited that the money received from the sale of the lumber was insufficient to pay the claims which had become liens against it; that the receiver had no means of obtaining any money with which to pay his expenses as such receiver, and the judgments and claims against the Sitka company, except from the sale of the property of said company; that the mill had not been operated; that he had been put to the continuing expense of caring for the property and maintaining a watchman for the mill; that the property of the company was rapidly depreciating in value; and that unless an expenditure of at least $10,-000 should be made before the rainy or winter weather set in, the depreciation could not be materially arrested. The supplemental petition further stated that the pulp mill and sawmill, in addition to the real property and the buildings thereon situated, consisted of ''a large amount of personal property belonging to said pulp mill and said sawmill, which said personal property'' was ''an integral part of the whole of said mills'', and the same could not be operated as manufacturing plants of that nature, or at all, without it; and that said personal property could not be sold separately from said plants except possibly at junk prices, ''and

the separation thereon from said mills would necessarily destroy the same as a sawmill and pulp mill, and if so sold separately would prevent the receiver from realizing within 75 per cent of the price which he could realize or sell the pulp mill and sawmill for''. It was further stated that the sawmill and pulp mill were dependent upon each other. The receiver re-iterated that all the real property was essential to the operation of the mills and that such property was used for storage purposes, pipe lines, dams, reservoirs, etc. He further pointed out that the real and personal property ''should be sold in bulk and such sale should be absolute and without right of redemption; and that if said real property should be sold subject to redemption, the depreciation would be so heavy and large that it would materially affect the price which could be obtained upon a sale thereof, for the reason that the purchaser could not proceed and make the expenditures necessary at this time to arrest the loss and depreciation now occurring, nor with safety to his investment operate said plants''. The prayer of this supplemental petition asked that the court make an order directed to any and all persons concerned, requiring them to appear on a day certain, to show why the court should not make an order of sale of the real and personal property of the Sitka company, and to show cause why such sale should not be absolute and without the right of redemption, and further, ''why the receiver should not proceed and wind up the affairs of said defendant Sitka Spruce Pulp & Paper Company as to each, any and all of its property within the state of Oregon''. Such an order was made on July 10, 1933, and service thereof was acknowledged on behalf of the three appellants by one of their attorneys of record.

A hearing was had on this petition on July 22, 1933, at which were present attorneys representing all the judgment lien claimants and these appellants. A great deal of discussion was had relative to the amount to be fixed as the upset price, and to a sale without the right of redemption.

Counsel for appellants entered objections in the record to the proposed order of sale, on the following grounds: (1) that because of existing financial conditions the sale should be postponed until a more favorable price could be obtained; (2) "that under the statutes of Oregon there is no power in the court to make an order for the sale of real property without redemption"; and (3) that there should "be no upset price fixed, for the reason that the court has no power to fix an upset price nor limit the minimum amount that should be produced upon the execution sale". No other objections were made by these appellants or by any one else, to the sale of the property at that time.

On August 8, 1933, an order was made for the sale of the sawmill, pulp mill, the land adjacent thereto and the land used for accumulating and impounding water, as a unit, without the right of redemption, for not less than $150,000, and subject to confirmation by the court. The order recited many of the facts hereinbefore mentioned with reference to the petition for the sale of real property, including a statement that the Sitka company was insolvent and that:

"Said sawmill, in addition to the buildings and lands upon which it is situated, and also the said pulp mill, contain a large portion of personal property necessarily used in the operation of said mills, and that the same could not be so operated without said personal property consisting of machinery and other equip-

ment, and that no portion thereof, either the personal property or the other property heretofore described, can be sold or disposed of singly or separately without destroying the property as a sawmill and pulp mill.''

The judgment lien creditors on January 4, 1934, filed a petition for the modification of the former order of sale, in which petition all, or apparently all, the judgment lien creditors joined, including the Coos Bay Iron Works, the latter represented by the same counsel appearing for the appellants in this court. In that petition it was urged that the order of August 8, 1933, ''be so amended and changed as to direct the receiver to make a sale of said property at public sale to the highest bidder, for the reason that a number of months have now intervened since the date of said order and the giving of notice thereof by said receiver, and that no sale has been negotiated, or offers made to said receiver for said property at the price in said order designated; that said property is materially deteriorating and these petitioning creditors' security therein is diminishing by said depreciation, and it is to the best interest of all concerned that the property be sold by said receiver, and the expenses necessary for its care be stopped''. Based upon said petition and at the request of the judgment lien creditors and the receiver, the court on January 6, 1934, amended the former order of sale by directing the receiver to advertise and sell the property of the Sitka company without any upset price, as a unit and without the right of redemption.

Thereafter, on January 29, the court further amended the order of sale by including therein a description by metes and bounds of the real property

owned by the Sitka company, in which latter order it was recited that it was deemed advisable to set forth a description of the said property. In this order it was further stated that it appeared to the court that said property should be sold in order that the receivership might be closed and the affairs of said Sitka company wound up. This order, however, exempted from the sale "only cash, choses in action and accounts receivable". The court repeated that the property should be sold in one unit, without the right of redemption,. and that "said sale of said property may be free from all tax liens or any part thereof and free of all judgment liens or liens of any nature".

On February 17, 1934, a decree was entered determining the priorities of the secured creditors. All of these secured creditors as determined by the court in said decree, except the Umpqua Mills & Timber Company, whose lien was about $550 at the date of sale and of subsequent priority to those of the other secured creditors, later transferred their judgments to three trustees for the purpose of having those trustees submit a bid for the property. Neither the appellant bank nor the warehouse corporation was decreed to be a secured creditor.

The receiver on March 10, 1934, filed a report in court, stating that real and personal property of the Sitka company had by him been sold, subject to taxes, for the sum of $74,242.70, to the trustees representing all but one of the judgment lien creditors, whose total judgment on March 5, 1934, the date of the sale, aggregated $61,376.40, which amount was to be accounted for by the satisfaction of said judgments, and the balance, to-wit, $12,866.30, was to be paid in cash. The lien of the judgment creditor not involved in

that purchase was subsequent to the liens of the trustees' assignors.

March 16, 1934, was set as the time for hearing objections to the sale. This was later postponed to March 24 following, at which time a hearing was held and the appellants were all represented. The receiver reported that since the sale had been made one Mr. Thomle had suggested that he might be able to offer a better price than that which had been obtained. On the date of the hearing objections were filed by counsel for the three appellants, and during the hearing said counsel announced that he had that day received instructions from the Robert Dollar Company to appeal the case to the supreme court. The matter was continued until April 2, 1934, in order to give Mr. Thomle an opportunity to ascertain whether or not he could make a better bid than that which had been made. On that day amended objections to the confirmation of the sale were filed by counsel for the three appellants. During the hearing counsel for the appellants stated that he had written to the attorney for the bank and the Dollar interests, as well as to the attorney representing the warehouse corporation; that he had that morning received a call from the attorney for the Robert Dollar Company to the effect that that company was advised by the bank that if the court would give a reasonable extension of time, the bank could raise enough money to pay off the preferred claims and the receivership expenses; and that the bank could not do so at that time, but would need a reasonable time within which to act. Counsel admitted that he did not know whether that could be done or not, and he would not ask the court to postpone the confirmation on that account.

The amended objections to the confirmation of the sale covered those included in the original objections, but with somewhat more detail, and added others. The objections as made were the following: (1) that the court had no jurisdiction or power to sell any of the property attempted to be sold; (2) that there were no allegations sufficient upon the record for any proceedings upon which to predicate a general winding-up of the business of the Sitka company or a sale of its assets or real property; (3) that the court erred in its decree determining the priorities of lien claimants and in not including the bank and the warehouse corporation and that such decree should therefore be set aside; (4) that the attempted order of sale of August 8, 1933, as subsequently amended by orders of January 6 and 29, 1934, was erroneous in that it ordered a sale of the property by the receiver when the court had no jurisdiction of the property or any part thereof and had no jurisdiction to order a sale of said property at the receiver's sale or to "convert said proceedings into a general winding-up proceeding"; (5) that the receiver was authorized and directed to sell the real and personal property as one unit without right of redemption of the Sitka company or any judgment or lien creditor, and that by failure to include the bank and the warehouse corporation in the decree of priorities the order of sale thereby deprived said judgment creditors of the right of redemption; (6) that the sale was null and void; (7) that the sale was for a totally inadequate price; (8) that the order of sale of August 8, 1933, as amended by the order of January 6, 1934, and that of January 29, and each of said orders, was "erroneous in form and substance and contained conditions and provisions contrary to law and in violation

of the statutes of the state with reference to the sale of property, and the terms thereof were sufficient to and did in fact chill the bidding''; (9) that the report of the receiver showed that neither the terms of the order of sale of August 8, 1933, nor the orders by which that order was amended were complied with; and (10) that subsequent to the order of January 29, 1934, the creditors whose priorities had thus been established by decree of February 17, 1934, entered into an agreement, of which a copy is attached, by which agreement they transferred their judgments to the three trustees hereinbefore mentioned. It is further specified in this tenth objection that the said trustees entered into an agreement with the International Wood & Sulphite Company whereby said company advanced the sum of $12,866.30 referred to in the receiver's report, and ''these objectors allege that the said sale by the receiver is in effect colorable only and the real proposed purchaser is said International Wood & Sulphite Company, and said sale is terminable and conditional and if said property is not purchased by said International Wood & Sulphite Company, the trustees must assign and reconvey to their grantors the judgment and claims, and the effect thereof is to deprive all other creditors of their claims and to give the trustees and said International Wood & Sulphite Company an unlawful preference''.

The court on April 2, 1934, overruled the objections so made and confirmed the sale to the trustees hereinbefore recited, of the real and personal property of the corporation for the amount hereinbefore stated, subject to the taxes against said property, which at that time exceeded $30,000. At the time of said confirmation the $12,866.30 in cash had been paid and the

assignments of the judgments of the lien creditors had been turned over to the receiver.

Later, on May 4, the bank served upon the sheriff, trustees and receiver a notice of intention to apply to redeem for the sum of $74,242.70 together with interest at 10 per cent from March 5, 1934, to May 4, which application was denied and no appeal therefrom taken. This later proceeding is mentioned for the reason that the papers are before us and have been referred to by counsel for appellants in their brief.

Twenty-six assignments of error are urged by appellants in their brief, many of them subdivided into multiple specifications, and in addition the so-called "statement" contains much argument concerning the alleged errors committed by the trial court, interwoven with the factual recital. A discussion of each and every one of these assignments separately, with specific reference to each authority cited, would unduly and unnecessarily lengthen this opinion and tend to obscure the real issues involved.

■ The original suit filed by the Home Mortgage Company had for its purpose the recovery from the Sitka company of wages due twenty-eight workmen who had assigned their claims to the plaintiff. The liens sought to be foreclosed covered certain lumber and pulp at the plant of the Sitka company and were on a parity with similar laborers' liens represented by the cross-complainants, Annie Smith and Dennis McCarthy, and the priority of all such liens was being controverted by the bank and the warehouse corporation. In order for plaintiff to foreclose its liens it was necessary and proper to include as parties defendant to the litigation the warehouse corporation and the bank, as well as the cross-complainants above named.

The plaintiff, however, was not content to look to its liens alone for the satisfaction of any judgment which it might recover against the Sitka company, and in its twenty-ninth cause of suit it alleged specifically facts which showed that the Sitka company was insolvent. In order to protect the plaintiff, the bank, the warehouse corporation and the cross-complainants, as far as possible, in any amounts remaining unpaid on their judgments against the Sitka company after applying the money realized from the sale of their security, plaintiff sought the appointment of a receiver of all the property, real and personal, in which the defendant Sitka company had any interest.

At the time the suit was filed there were numerous judgments outstanding against the Sitka company. Other actions were pending in which that company's property had been attached, thereby assuring to the plaintiffs in those proceedings, in case of recovery, liens against the real property of the defendant prior to any which the plaintiff here might acquire. Without a receiver it was reasonably to be expected that those who had judgments against the Sitka company would proceed to sell not only the real but also the personal property belonging to that defendant. Undoubtedly in that proceeding the one who first levied execution would proceed to sell whatever personal property the Sitka company owned, and inasmuch as the liens held by the plaintiff, the cross-complainants, the bank and the warehouse corporation exceeded the value of the personal property covered thereby, little, if anything, could be realized from the sale of such personal property on the execution of these judgment creditors. Whatever other personal property was sold would not, of course, be subject to redemption.

The judgment creditor having the prior lien, either by judgment or attachment, would, if the amount received from the sale of personal property were insufficient to satisfy his judgment, proceed to sell the real property or so much thereof, of the Sitka company, as would be necessary to satisfy his judgment. A subsequent judgment lien creditor would, under such circumstances, be deprived of any rights against the personal property, and in order to realize anything on his judgment he would have to redeem the real property from the prior sale. The same would be true of each and every other subsequent judgment lien creditor. And if each judgment lien creditor were left to his individual statutory remedy of enforcing his judgment through the sale on execution of the defendant Sitka company's property or through the redemption from earlier sale, as the case might be, it is indeed questionable that many such judgment lien creditors would realize anything appreciable on their judgments.

With the plant of the Sitka company closed for several months, with unpaid laborers' wages amounting to more than $9,000, with liens against the real property by judgments and attachments exceeding $54,000, with several years' taxes delinquent, with over $700,000 in claims of unsecured creditors swelling the total of the Sitka company's liabilities, the plaintiff displayed wisdom in seeking the aid of a court of equity, looking to the appointment of a receiver of all the property of the Sitka company. In view of the facts confronting the plaintiff at the time the suit was filed, and the subsequent court proceedings, it is manifest that the receivership established by the court's order of August 8, 1933, was not intended to be limited to the lumber and pulp covered by the liens of

plaintiff and the defendants, but was to be general in scope and extend to all the property of the Sitka company.

Shortly after the appointment of the receiver, general creditors began to file their claims with him, and in order that all the creditors of the Sitka company might participate in whatever funds might be realized from the preservation and sale of the company's property, the receiver requested and obtained from the court an order requiring all creditors of that company to file their claims by a date certain. Even the bank, at that time believing that the receivership was general, presented its claim in the sum of $371,000. The judgment lien creditors, in reliance upon the order of the court appointing a receiver to take charge of all the property of the Sitka company, acquiesced therein and refrained from any attempt to enforce their judgments by execution.

■ Before the receiver was appointed the Sitka company was duly served with a motion, supported by affidavit, for the appointment of such receiver. No resistance whatever was made by the Sitka company to that appointment. The facts stated in the affidavit show that the company was insolvent and that its liabilities greatly exceeded its assets. It is not an unusual proceeding to appoint a receiver before answer and after notice, upon the affidavit of the litigant therefor applying: High on Receivers (4th Ed.), p. 112, § 88; p. 124, § 107. Failure of the Sitka company to deny the averments of the affidavit or the allegations of the twenty-ninth cause of suit set forth in the complaint was tantamount to an admission of the facts therein stated.

■ At the time the receiver was appointed there was on file a demurrer of the Sitka company to the first twenty-eight causes of suit set out in the complaint. No demurrer or answer was ever filed to the twenty-ninth cause. The appellants, however, contend here that since the demurrer was directed to each and every one of the twenty-eight causes of suit, there is nothing to indicate that the twenty-ninth cause was not implied in that designation. A sufficient answer to this proposition is that even according to appellants' brief the trial court permitted the plaintiff and the cross-complainants Smith and McCarthy to amend their pleadings "by interlineation supplying the defective omissions", which omissions have hereinbefore been specifically mentioned. No attempt was made at any time by the Sitka company to set aside or alter the order of the court adjudging that company in default for failure to answer. The mere fact that no order was entered expressly overruling the demurrers does not alter the situation. All parties treated the amendment by interlineation as "supplying the defective omissions" in the several pleadings. The order of the court permitting such interlineation was in effect an overruling of the demurrers, in that compliance with it cured the defects on which the demurrers were based.

Section 32-701, Oregon Code 1930, provides:

"A receiver is a person appointed by a court or judicial officer to take charge of property during the pendency of a civil action, suit, or proceeding, or upon a judgment, decree, or order therein, and to manage and dispose of it as the court or officer may direct."

And § 32-702 is in part as follows:

"A receiver may be appointed by the court in the following cases: * * *

"8. When a corporation or cooperative association has been dissolved or is insolvent or in imminent danger of insolvency and it is necessary to protect the property of the corporation, or cooperative association, or to conserve or protect the interests of the stockholders or creditors."

■ The facts set forth in the twenty-ninth cause of suit and in the affidavit accompanying the motion for the appointment of a receiver are wholly sufficient, inasmuch as the same are not denied, to warrant the court in appointing a receiver for all the property of the Sitka company on the ground that the company was either insolvent or in imminent danger of becoming insolvent, and that it was necessary to protect the property of that company for the benefit of its creditors. In construing a similar statute, the supreme court of the state of Washington in the case of *Oleson v. Bank of Tacoma,* 15 Wash. 148 (45 P. 734), held that when the insolvency of the corporation was made to appear to the court it became the duty of the court to appoint a receiver of the corporation's property.

■ Although the general creditors were not named as parties to the original suit, nevertheless, when on the order of the court they filed their claims with the receiver, they in effect became parties to the proceeding. They thereby submitted themselves to the jurisdiction of the court for the purpose of having their claims determined. As said in High on Receivers (4th Ed.), p. 438, § 350:

"And in such case, any creditors, who are not nominal parties to the suit, may make themselves such parties in fact by coming in and presenting their claims under the decree, and by submitting themselves to the jurisdiction of the court for the adjustment of their

demands; and a creditor thus coming in as a *quasi* party to the action is entitled to the full benefit of the decree.''

At the time the decree of April 20, 1933, was entered, the only matters relating to the receivership which were attempted to be determined by the court were the amounts due the plaintiff, the cross-complainants Smith and McCarthy, the defendant bank and the defendant warehouse corporation, and their relative priorities as to liens. There was no attempt on the part of the court to determine the amounts due the general creditors on the claims which they had filed, or the priorities of the judgment lien creditors.

It seems not ever to have occurred to these appellants to question the finality of the decree of April 20, 1933, or to claim that said decree disposed of all matters before the court, until a long while thereafter. For instance, we have them appearing by counsel at the hearing on July 22, 1933, and objecting to the sale, on three grounds only, to-wit: (1) that the general financial conditions were unfavorable; (2) that the statutes of Oregon did not permit the sale of the property without redemption; and (3) that the court had no authority to fix an upset price.

■ It is obvious that the so-called decree of April 20, 1933, was merely a step in the process of winding up the affairs of the Sitka company. Even the supplemental petition of the receiver before the hearing of July 22 asked for an order to show cause why the affairs of that company should not be wound up and all its property sold, and an order in compliance therewith was served upon counsel for these appellants. The only objections which the appellants made to this

petition have just been pointed out. It is not here necessary to refer again to all the facts hereinbefore recited, tending to show that the receivership was not limited to the property covered by the liens of plaintiff, cross-complainants, the bank and the warehouse corporation, and that said receivership was not terminated by the decree of April 20, 1933.

■ Neither the twenty-ninth cause of suit, the affidavit accompanying the motion for a receiver, nor the order appointing such receiver described the real or personal property belonging to the Sitka company. It did, however, refer to all the property of that company, and in our opinion, inasmuch as no objection was made to such proceeding, the description, although general, was sufficient to uphold the appointment of a receiver of all the property of the Sitka company: *Cheney v. Maumee Cycle Co.*, 64 Ohio St. 205 (60 N. E. 207); High on Receivers (4th Ed.), p. 112, § 87. Many authorities have been cited by the appellants relative to the question of when a judgment or decree becomes final, and to the power of the court thereafter to alter or change the same. Not any of those cases so cited are on facts similar to those involved herein, and therefore they are not controlling. No attempt was made by the court, by proceedings subsequent to that decree, to alter or amend it in any wise. It still remains final as to the matters therein determined.

■■ The decree of April 20, 1933, provided that the bank was entitled to recover a certain amount on its claims, and it is contended by the appellants that this action of the court was in effect a judgment in favor of the bank and against the Sitka company, which, upon being docketed, became a lien upon all the real

property of that company. This contention by appellants is based largely upon their theory that the receivership was a limited, and not a general one. The general rule, or at least the great weight of authority, is to the effect that when a receiver is appointed to take possession of all the property of a corporation and preserve it for the benefit of all the creditors, the receivership is general and no liens can thereafter be acquired by any creditors against the property of the corporation, which is considered as being in the custody of the court: 53 C. J., p. 124, § 138; *Mercantile Trust Co. v. Southern States Land & Timber Co.*, 86 Fed. 711.

10. The court ordered all the real property to be sold as a unit together with the personal property. A showing was made by the receiver that all the real property, consisting of the land and various plants located thereon, was so situated that the same could not be operated except as a unit; that the sawmill and the pulp mill should be operated together; and that a much better price could be realized, if all the real and personal property could be sold together, rather than in separate parcels. No question appears to have been raised at any time during this protracted receivership proceeding as to the offering of any particular unit for sale, and no objection was made in the trial court, so far as we have been able to ascertain, to the sale of the real and personal property together.

The appellants, however, did object, before and after the sale, to a sale of the property without the right of redemption.

■ We have already seen that none of these appellants became a judgment lien creditor. None of them

could have redeemed after the sale of the property, with the possible exception of the Sitka company; but whatever right the Sitka company had to redeem became an asset of the corporation and, as such, subject to sale by the receiver. If, as stated by the receiver in his reports, the property would bring much more if it were sold as a unit without the right of redemption, than if it were sold otherwise, then, under the circumstances, the trial court was justified in attempting to receive the largest possible price for the creditors.

■ There are contentions made by the appellants that under § 3-501, Oregon Code 1930, the court was powerless to order a sale without redemption. That section of the code was held by the trial court not to control in receivership proceedings to wind up the affairs of a corporation and dispose of all its assets. In that view of the law we concur. See, in this connection: *McKenzie v. Bismarck Water Co.*, 6 N. D. 361 (71 N. W. 608); *Pacific Northwest Packing Co. v. Allen*, 116 Fed. 312; *Beet Growers Sugar Co. v. Columbia Trust Co.*, 3 Fed. (2d) 755; *Rossi v. Colorado Pulp & Paper Co.*, 88 Colo. 461 (299 P. 19); *Blair v. Illinois Steel Co.*, 159 Ill. 350 (42 N. E. 895, 31 L. R. A. 269); *Watkins v. Minnesota Thresher Manufacturing Co.*, 41 Minn. 150 (42 N. W. 862); High on Receivers (4th Ed.), p. 233, § 199c.

All the judgment lien creditors joined in the petition for the sale of the property, which requested that the same be sold without right of redemption. When, after attempting to sell the property over a considerable period of time, the receiver was unsuccessful in finding a bidder under the terms imposed by the court, the judgment lien creditors filed a petition requesting that the property be sold to the highest bidder and that the provision in the former order fixing an upset price

be eliminated. The only parties who are now complaining about the sale of the property without the right of redemption are the insolvent corporation and two general creditors, whose rights are in nowise injuriously affected by the proceedings adopted by the trial court.

Some contention is here made that the court should not have ordered the sale of the real and personal property as a unit and that by following such a course the judgment lien creditors, who had no prior rights to the personal property, were accorded a distinct advantage over the general creditors. In support of this argument it is asserted that the proceeds from the sale of the personal property should be applied on the indebtedness owing to the general creditors.

The record does not disclose of what the personal property of the Sitka company consisted. Hereinbefore in the recital of the various proceedings it has been pointed out that numerous items of personal property were from time to time, by order of the court, sold by the receiver. It is common knowledge that in lumber mills and pulp mills much of the equipment is attached to the building where it is used, and such plants are usually considered as consisting of the building and the equipment therein located. It may be that by referring to personal property the receiver meant to include such equipment, not knowing whether it was a part of the realty or had retained the status of personal property. This is somewhat borne out by the following statement in appellants' brief:

"As we have elsewhere shown, there is no definite description of the personal property by which the same can be identified herein, and we claim the order is invalid in that respect; however, if it be assumed that the personal property be segregated in some of the proceedings sufficient to ascertain what it is, we assert

that in any event it could not be found to be other than some miscellaneous tools, miscellaneous machinery and equipment not bolted to the floor, some motors not installed as fixtures, a traveling crane and possibly one of the carriers. We are at a loss to determine what the personal property included in this order of sale is, but we are confident from our knowledge of the plant that it is unattached equipment of some such nature."

█ Much of the personal property referred to by counsel for appellants in the above excerpt appears to have been sold by the receiver under the many orders of the court hereinbefore listed. Moreover, we do not feel impelled to speculate upon what the value of such personal property might be, and there is no attempt to point out to us the nature or amount of it.

█ The court accepted the bid of the trustees, which was made up of a cash offer and the satisfaction of certain judgment liens. Had the price obtained for the property been in cash alone, the judgment lien creditors would, if the property were sold free from judgment liens, have been entitled to full payment of their judgments prior to distribution of any of the money to the general creditors. Instead of requiring the bid to be made in cash alone and the amount of the judgment liens paid therefrom, the court was justified in considering the satisfaction of the judgments as the equivalent of cash. It is the common practice in foreclosure proceedings and in sales on execution for the sheriff to accept the satisfaction of the judgment or decree by the plaintiff as part of the price named in the bid. In the present instance the procedure adopted by the court could not in any manner have reduced the total amount which otherwise might have been offered. If paid in cash alone, the amount of $74,242.70, the total bid by the trustees (including judgments satisfied and cash)

would not have been of any greater benefit to the general creditors than was the bid as made. The fact that their bid was contingent upon the satisfaction of judgments assigned to them would not in any way have discouraged other bidders from going above their offer.

In the annotation to the case of *State ex rel. Dooley & Co. v. Superior Court* (128 Wash. 253, 222 P. 492), as reported in 35 A. L. R. 252, at p. 255, under the heading "power of court to authorize or direct receiver (or trustee in bankruptcy) to sell property free from liens", after stating that there is comparatively little authority on the question indicated, apart from the cases in relation to trustees in bankruptcy, it is said:

"The trend of the cases, however, seems to be toward the support of the holding in the reported case (State ex rel. W. E. Dooley & Co. v. Superior Court, *ante* 252), that a court of equity may, under proper circumstances, order a sale by the receiver of the property being administered upon, free from liens, and remit the lienor to the proceeds."

In the case at bar, the order of sale did not require the receiver to sell the property free from all judgment liens. In this respect it provided "that said sale of said property *may* be free from all tax liens, or any part thereof, and free of all judgment liens or liens of any nature". The only bid made to the receiver was the one which was approved by the court, and such bid was subject to taxes. There was nothing to prevent submission of bids for the property subject to the taxes and judgment liens. It was, however, very unlikely that any one would care to offer a bid in any large sum for the property subject to those liens, for he would know that the judgment lien creditors would be forced to sell the property on execution and that he would have to redeem the same in order to profit by his purchase.

■ If the property were sold on execution for less than the total of all the judgment liens and were thereafter redeemed by the purchaser, it would again be subject to sale for the satisfaction of the remaining liens: § 3-502, Oregon Code 1930; *Flanders v. Aumack,* 32 Or. 19 (51 P. 447, 67 Am. St. Rep. 504). In other words, to obtain good title to this property, free from all liens and incumbrances, it would be necessary for a purchaser who bought the property from the receiver subject to the liens eventually to pay them in full. And since this is so, why would it not be preferable for such purchaser to pay a larger sum in the first instance and be relieved of the onus of further sales and redemptions? What is more, if the sale were made by the receiver subject to these liens, as suggested by the appellants, would such sale be free of the right of redemption? If not, who, in the face of these obstacles, would be willing to give a sou for the right which he might acquire at such sale? There appears no good reason why a sale of the property subject to the liens should be ordered made free of the right of redemption any more than a sale originally made free of the liens.

■■ The general rule seems to be that neither a trustee in bankruptcy nor a receiver should undertake the administration of property covered by liens, unless there is a probability that the property can be sold for more than the amount of the liens. There was a probability, in the case at bar, that the property sold by the receiver would bring more than the amount of the liens, and in any event the offer made was more than the total of the liens. It is said, however, that all the cash paid by the bidders will be consumed in the payment of fees of the receiver and his attorney. The record does not disclose any order fixing those fees, and in determining

the amount thereof the trial court undoubtedly will bear in mind all the facts in the case.

It is said by the appellants that the terms of the agreement whereby these judgments were assigned to the trustees were conditional upon the subsequent sale of the property by the trustees, and that it might be beyond the power of the trustees to comply with such terms, with the result that the sale by the receiver to the trustees would fail. A sufficient answer to this contention would seem to be that since the assignments of the several judgments had been made over to the receiver and the $12,866.30 paid to him in cash, and it was requisite that the judgments be satisfied of record before the receiver could deliver a conveyance of the real property to the purchasers, the appellants' fears in this respect are groundless. But, assuming that the trustees should not be able to carry out their agreement of purchase, the only thing left for the court to do would be to order a new sale, which is, as we understand it, what the appellants are requesting.

The attorney for the receiver was also attorney for the plaintiff, Home Mortgage Company, and some of the other creditors. It is now for the first time contended by the appellants that such attorney was acting in a dual capacity and that he was representing antagonistic interests. Had this matter been brought to the attention of the trial court and a showing made that such attorney in representing his private clients was inimical to the best interests of those affected by the receivership, a substitution of counsel would undoubtedly have been made. It appears that very many of the attorneys in Coos county were involved in this litigation, and under such circumstances the court was perhaps embarrassed to select a legal adviser for the

receiver who was not in some way interested in the proceedings. Moreover, there is nothing in the record even to indicate that counsel for the receiver neglected his duty as such, to the advantage of other parties represented by him.

We have not herein attempted to discuss specifically each and every contention advanced by the appellants, although all have been given careful consideration. On the entire record we find that no error prejudicial to the rights of the appellants was committed by the trial court. The decree appealed from is therefore affirmed.

BEAN and BELT, JJ., not sitting.