Argued and submitted January 29, peremptory writ issued September 3, 1986

**STATE ex rel BRYANT,**
*Plaintiff-Relator,*

*v.*

**ELLIS,**
*Defendant.*

(Nos. A8405 - 03151; SC S31944)

724 P2d 811

Thomas E. Ewing, Salem, Oregon, argued the cause for defendant. With him on the briefs were Steven J. Cannata, Cannata, Genovese & Papale, San Francisco, California, Paul J. De Muniz, Garrett, Seideman, Hemann, Robertson & De Muniz, Salem, Oregon.

Sara A. Clark, Sacramento, California, argued the cause for plaintiff-relator. With her on the briefs were Weintraub Genshlea Hardy Erich & Brown, a Professional Corporation, Sacramento, California, and John J. Herbrand, Beaverton, Oregon.

Before Peterson, Chief Justice, Lent, Linde, Campbell, Carson and Jones, Justices, and Gillette, Justice pro tempore.

LINDE, J.

## LINDE, J.

The issue in this proceeding is whether a circuit court has authority to disqualify an attorney for one or more of the litigants from appearing in a civil case and to enjoin attorneys from other conduct pertaining to the case.[1] Relator, one of several defendants in an action in the Circuit Court for Multnomah County, moved for an order disqualifying first a law firm, Diamond & Sylvester, and later another lawyer, Steven J. Cannata, from representing the other defendants in the action, alleging conflicts of interest. Diamond & Sylvester voluntarily withdrew as attorney of record. The defendant circuit judge denied relator's motion without reaching the merits, holding that the requested relief was beyond the authority of an Oregon circuit court.

Relator sought and we allowed an alternative writ of mandamus to examine that question. We hold that circuit courts do have authority to restrain lawyers from prejudicially improper acts of legal representation, although those courts are not charged with enforcing the Code of Professional Responsibility.

Because the merits are not at issue here, we only summarize the nature of relator's claim. Relator is the managing general partner of a number of partnerships created for the purpose of developing and marketing California real estate. Diamond & Sylvester, a Seattle law firm, represented one group, the Palmquist partnerships, in the formation of another group, the Sacore partnerships, and along with Cannata (who is a California lawyer) represent the Palmquist group in later California litigation against the other partnership groups. The Oregon case is a civil action against the several partnerships and named individuals, in which Diamond & Sylvester initially appeared for all defendants. The circuit court permitted Cannata to appear for all defendants other than David Bryant, the present relator. Cannata's position on behalf of his clients was that only Bryant individually was liable for the claim asserted in the Oregon action. Bryant then moved to disqualify Cannata and Sylvester &

---

[1] We follow the terminology of ORS 9.310, which defines an "attorney" as "a person authorized to represent a party in the written proceedings in any action, suit or proceeding, in any stage thereof." In a broader context than litigation, we use "lawyer," as do the disciplinary rules.

Diamond for conflict of interest and to enjoin them from advising or assisting in the litigation, the motion that the circuit court denied for lack of authority.

Outside of Oregon, the courts' authority to disqualify an attorney from appearing for a party in a case before the court has long been recognized and frequently exercised.[2] The premises and the criteria for doing so, however, leave room for some disagreement. *See, e.g.,* Lindgren, *Toward A New Standard of Attorney Disqualification,* 1982 Am B Found Research J 419. Federal courts presumably entertain motions to disqualify attorneys as a function ancillary to the court's general control over a case before it, not as an exercise of general equitable or supervisory jurisdiction over the relations between attorneys and clients. In deciding such motions, they often draw on the American Bar Association's Code of Professional Responsibility, regardless whether these have been formally adopted as binding rules. *See* Note, *Attorney Disqualification for a Conflict of Interest in Federal Civil Litigation: A Confusing Body of Law in Need of Organization,* 30 Vill L Rev 465 (1985). The situation in a state court differs insofar as the court does have general equitable jurisdiction independent of some other action and as the disciplinary rules may have the force of law.

Disciplinary rules approved by this court have the status of law in Oregon. ORS 9.490. The enforcement of those rules by means of imposing disciplinary sanctions is in the jurisdiction of the professional boards created by the Oregon State Bar Rules of Procedure and ultimately of this court. It does not involve the state's other courts. *Brown v. Oregon State Bar,* 293 Or 446, 451-52, 648 P2d 1289 (1982). This, of course, does not mean that conduct proscribed by a rule of professional conduct, such as one of the Disciplinary Rules, may not also violate a civil obligation of a member of the profession to another person. On the contrary, such rules ordinarily are designed to protect clients, patients, or other persons against the consequences of a misplaced trust in the professional's sense of responsibility and probity. Thus circuit

---

[2] *See* Annot., 31 ALR 3d 715; 52 ALR 2d 1245, 1279-86. Many recent cases are collected in Note, *Attorney Disqualification For A Conflict Of Interest In Federal Civil Litigation: A Confusing Body Of Law In Need Of Organization,* 30 Vill L Rev 463 (1985).

courts have jurisdiction to try damage claims for professional negligence notwithstanding that enforcement of the professional rule against neglecting or acting incompetently in a legal matter, DR 6-101, is in the exclusive jurisdiction of the disciplinary tribunals and this court. In *Bob Godfrey Pontiac v. Roloff,* 291 Or 318, 630 P2d 840 (1981), plaintiffs sued attorneys for damages for making intentionally false claims against plaintiff in another action, contrary to ORS 9.460(4).[3] This court affirmed a summary judgment for defendants on the merits, without any suggestion that a damage action for the alleged violation of a professional standard was beyond the circuit court's jurisdiction.[4] We know no reason why the circuit courts' jurisdiction should not extend beyond damage actions to include equitable remedies, for instance to an accounting for trust funds when the lawyer's alleged misconduct violates DR 9-101. Indeed, it is doubtful what other court would have original jurisdiction to give injunctive relief, if not the circuit court.

Seen in this light, the question is not really the circuit court's authority to entertain a claim that the claimant's lawyer or former lawyer has breached or is about to breach a fiduciary or other professional obligation to the claimant but rather what standards apply. In *Duke v. Franklin,* 177 Or 297, 305, 162 P2d 141 (1945), which was not called to the trial court's attention, the Multnomah County circuit court and this court considered and rejected a party's demand to disqualify the opposing party's attorney without expressing any doubt that such an order would be within the circuit court's authority in a proper case. *See also Home Mortgage Co. v. Sitka*

---

[3] ORS 9.460 provides:

"An attorney shall:

"* * * * *

"(4) Employ, for the purpose of maintaining the causes confided to the attorney, such means only as are consistent with truth, and never seek to mislead the court or jury by any artifice or false statement of law or fact;

"* * * * *."

[4] The court expressly noted that

"* * * the question whether plaintiff would have a private cause of action in tort under ORS 9.460(4) for intentional use of false testimony is not presented for decision in this case."

*Bob Godfrey Pontiac v. Roloff,* 291 Or 318, 321 n 1, 630 P2d 840 (1981).

*Co.,* 148 Or 502, 540, 36 P2d 1038 (1934). The court's authority does not necessarily rest on its jurisdiction over some other pending case; a claim for equitable relief may arise from a lawyer's prejudicially improper acts outside any litigation as well as in a pending action.

We recently considered the role of professional standards in civil rather than disciplinary proceedings in *Humphers v. First Interstate Bank,* 298 Or 706, 696 P2d 527 (1985). That was an action for damages against a physician who had disclosed confidential information about the identity of a past patient. We held that a contractual duty to keep the information confidential might exist because a defendant "may have promised confidentiality expressly or by factual implication," but in *Humphers* the duty was imposed by the statutes regulating licensing and discipline of physicians, specifically ORS 677.190(5), and statutes concerning the secrecy of adoption records. 298 Or at 721. We noted that a dispute about the scope of a rule of professional conduct that is administered by a specialized board, such as the State Board of Medical Examiners, in a genuinely doubtful case might require reference to the agency's primary jurisdiction. 298 Or at 719-20. But many duties of professional persons toward their patients, clients, or customers exist independently of the professions' special disciplinary codes, and courts know the duties of lawyers as members of the same profession even though only this court administers the Code of Professional Responsibility.

A court's order, therefore, may hold a lawyer as much as, say, a broker, an accountant, or a bank to some fiduciary or other duty that, for lawyers, is covered by the Disciplinary Rules. For the same reasons, however, the question when and how to do so also depends on the setting in which the question arises.

The purpose of an order addressed to a lawyer (rather than to a party) may be to protect a party, or it may be to preserve the functioning and the integrity of the legal process apart from the interests of any party. For instance, a court may enforce its orders, ORS 1.010(2), or a duty imposed by law "in matters relating to the administration of justice in a court," ORS 1.025(1), and may act on professional misconduct that constitutes contempt, ORS 33.010(1)(a), whether or not

any party is prejudiced or objects. Requests to disqualify a lawyer for conflict of interest, however, ordinarily will be based on assertions of actual or potential prejudice to a present or past client, often involving the confidentiality of information to which the lawyer had professional access.[5] As we have noted, such requests need not concern litigation already pending before the court. They call for equitable relief of a kind that a court of general jurisdiction could order equally against other fiduciaries besides lawyers. The relief therefore is subject to common equitable principles.

The object in such a private dispute is not simply to enforce professional standards, as in disciplinary proceedings, or to maintain institutional integrity for its own sake. Neither is the object, as is sometimes said, to "maintain the confidence of the public" or "avoid the appearance of impropriety" at all costs.[6] The interests of others than the challenged lawyer may be prejudiced, particularly the interests of the client who stands to lose the representation, advice, or other services of his attorney and often of the attorney's entire law firm. This risk, of course, becomes more acute as litigation progresses. Ordinarily, persons need no official approval of their choice of lawyer; they are entitled to be represented by any member of the bar who agrees to do so. Prejudice to the lawyer's present client (or to other parties whose interests may be adversely affected by delay or other consequences) must be taken into account, along with timeliness of the request for relief, the adequacy of a carefully limited order and similar equitable considerations.

This mandamus proceeding is not the place to pursue

---

[5] ORS 9.460 provides:

"An attorney shall:

"* * * * *

· "(5) Maintain inviolate the confidence, and at every peril to the attorney, preserve the secrets of the clients of the attorney;

"* * * * *"

[6] See Lindgren, *Toward a New Standard of Attorney Disqualification*, 1982 Am B Found Research J 419, 443 n 96 (citing cases).

Many of the issues presented by requests to disqualify another party's attorney are identified and discussed in Note, *supra* note 2, and in many other articles. It would be only speculative *dicta* to anticipate them here.

those considerations in greater detail. We allowed the writ only because the circuit judge believed himself to be without authority to entertain relator's motion. We hold that the court did have such authority. We do not mean to invite future petitions for mandamus whenever a party is dissatisfied with a court's grant or denial of relief against a lawyer any more than against any other respondent; normally appeal after judgment will be an adequate remedy. *See Duke v. Franklin, supra; cf. Firestone Tire & Rubber Co. v. Risjord,* 449 US 368, 101 S Ct 669, 66 L Ed 571 (1981) (order denying motion to disqualify opposing party's counsel in civil case not appealable until final decision under 28 USC § 1291).

Peremptory writ to issue.