Argued and submitted November 28, 1988, McMenamin law firm denied attorney fees and ordered to repay attorney fees previously disbursed; personal representative's fee modified; otherwise affirmed June 14, 1989

## In the Matter of the Estate of
## Ronald K. Ragan, Deceased.

### KIDNEY ASSOCIATION OF OREGON, INC.,
*Appellant,*

*v.*

### FERGUSON,
*Respondent.*

### (135-858; CA A45750)

775 P2d 1383

Morton A. Winkel, Portland, argued the cause and filed the briefs for appellant.

Marvin S. Nepom, Portland, argued the cause and filed the brief for respondent.

Before Graber, Presiding Judge, and Rossman and Edmonds,* Judges.

ROSSMAN, J.

Graber, P. J., dissenting in part, concurring in part.

---

* Edmonds, J., *vice* Warden, J., retired.

## ROSSMAN, J.

Kidney Association of Oregon, Inc. (KAO) appeals from a judgment distributing the estate of Ronald K. Ragan. It claims that the trial court erred in allowing fees to the attorneys who represented the personal representative and in setting the personal representative's fee.[1] We review *de novo,* disallow attorney fees to the personal representative's original counsel, modify the personal representative's fee and otherwise affirm.

Ragan died in 1981. KAO was the sole beneficiary under his will. Robert McMenamin, an attorney, was a member of the KAO board of directors. McMenamin had also donated legal services to KAO. Other persons in his firm did work for KAO, and the firm billed KAO for that time. McMenamin advised KAO on estates in which KAO had an interest, including the Ragan estate.

The personal representative of Ragan's estate, Randall Ferguson, asked McMenamin to serve as the personal representative's attorney. McMenamin told Ferguson that before he could do that, he would need the approval of the KAO board. *See* DR 5-105(C).[2] Notwithstanding his own caution, McMenamin represented Ferguson without having obtained the board's approval.[3] Most members of the KAO

---

[1] KAO also claims that the trial court erred in allowing the personal representative $3,374.60 in accountant's fees. That assignment of error lacks merit and requires no further discussion.

[2] DR 5-105 governs attorney conflicts of interest. At times relevant here, it provided:

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"(B) A lawyer shall not continue employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

[3] McMenamin informed Marx, President and chairman of the board of KAO, of the personal representative's request, and Marx approved of the dual representation. The record does not show that Marx had authority to act on behalf of the board, however.

Board did not learn that McMenamin was representing the Ragan estate until 1983.

Ragan's estate included several pieces of real property, one of which, the Laurelhurst Apartments, underlies many of the problems in this case. The estate initially was valued at approximately $490,000, $285,000 of which was attributed to the Laurelhurst Apartments. Ragan and a partner whose interest he later purchased had paid $285,000 for the apartments in October, 1980, a few months before Ragan died. In fact, because of numerous building code and other violations, the Laurelhurst Apartments were worth far less than that. Ragan had bought the apartments from Montgomery[4] on a contract. The estate, through McMenamin, unsuccessfully negotiated with Montgomery to sell the apartment complex back to him. Eventually, Montgomery sued the estate for $100,000 in payments not made and late payment penalties. That action was settled in 1983 when the estate transferred the apartment complex and other consideration to Montgomery in exchange for Montgomery's giving up his claims against the estate. In the end, the Laurelhurst Apartments not only contributed nothing to the estate but cost it several thousand dollars in contract payments, maintenance expenses and attorney fees.

In April, 1984, the personal representative filed a final accounting and petition for judgment of final distribution. The petition stated that the estate's total assets were $42,165.28 and asked that the McMenamin firm, which already had received $10,000 from the estate, be paid an additional $27,415.33; that the personal representative, who already had received $5,000, be paid an additional $6,746.95; and that $248.63 be paid in miscellaneous expenses. Thus, approximately $7,754.37 remained for the sole beneficiary, KAO, which had been told earlier by McMenamin that the estate was worth half a million dollars. KAO, now represented by different counsel, filed objections to the final accounting. Those objections were virtually identical to the arguments that KAO makes on appeal.

KAO's objections triggered new proceedings in the

---

[4] Montgomery was one of several sellers. For ease of reference we refer to them collectively as Montgomery.

trial court: motions, depositions, discovery and a lengthy hearing before the court. The personal representative hired attorney Nepom to defend against KAO's objections. The court limited the personal representative's total fee to that provided by ORS 116.173(1)(which the court calculated to be $10,665.10), awarded a fee of $25,000 to the McMenamin firm for all services rendered to the estate and otherwise denied KAO's objections. The court then allowed the personal representative $7,500 in attorney fees for Nepom's defense of KAO's objections. Ultimately, the court entered a second amended and supplemental final account and judgment of distribution. KAO appeals from that judgment.

KAO argues, first, that the trial court erred in awarding fees to McMenamin and his firm. According to KAO, McMenamin violated DR 5-105 by representing both the estate's personal representative and its sole beneficiary. It asserts that an attorney who has violated ethical standards relating to conflicts of interest may not recover fees for his services in the matter; therefore, McMenamin and his firm should have been denied any fee. Alternatively, it argues that, even if McMenamin was entitled to reasonable fees, the amount awarded was excessive.

The trial court did not consider the issue of how a conflict of interest violation should affect an allowance of attorney fees. It reasoned, and the personal representative argues on appeal, that KAO and the personal representative shared an "identity of interest." It therefore concluded that McMenamin's dual representation constituted neither an actual nor likely conflict of interest. We disagree.

1.     A lawyer who wishes to represent multiple clients in a matter must consider whether that representation will involve an actual, likely or unlikely conflict. *In re Johnson,* 300 Or 52, 58, 707 P2d 573 (1985). "[W]hen the interests of two or more present clients of the lawyer are in actual conflict, the lawyer cannot ethically represent the multiple clients or any of them" under any circumstances. 300 Or at 58-59. On the other hand, if "the lawyer's independent professional judgment only is likely to be adversely affected," the lawyer may represent multiple clients *if* he obtains the consent of each after full disclosure of the possible effects. 300 Or at 59. Thus, if accepting the personal representative as a client might have diluted

McMenamin's loyalty to KAO, DR 5-105 required him to decline that employment or obtain the KAO board's approval. *See In re Porter,* 283 Or 517, 523, 584 P2d 744 (1978).

**2.** The personal representative asserts that he and KAO had common goals: to ensure a prompt administration of the estate and to maximize the gift to the decedent's beneficiary. However, although initially there was no actual conflict between the interests of KAO and the personal representative, their interests did diverge. KAO's primary interests were to maximize its recovery by minimizing and monitoring the expenses of the estate, including attorney fees and personal representative fees, and to obtain a speedy distribution of the estate. The personal representative, on the other hand, had a duty to administer the estate correctly, even if his efforts increased the estate's expenses or delayed its distribution. McMenamin owed a duty to KAO to see that the Ragan estate was administered efficiently and, specifically, that the estate's legal and other expenses were reasonable and justified. Given the fact that he and his firm were the source of the estate's considerable legal bills and that the personal representative's fees and expenses would be deducted from the amount that KAO eventually would recover, his judgment was "likely to be adversely affected." Because McMenamin faced a likely conflict of interest, he should have obtained consent to the dual representation. By failing to do so, he breached his fiduciary duty to KAO. *See State ex rel Bryant v. Ellis,* 301 Or 633, 638, 724 P2d 811 (1986).

Oregon courts have not previously addressed how such an ethical violation should affect a request for attorney fees. Generally, other jurisdictions have taken one of two approaches. The majority have punished attorneys by denying fees once a conflict of interest or other ethical violation has been established. *See Moses v. McGarvey,* 614 P2d 1363 (Alaska 1980); *Goldstein v. Lees,* 46 Cal App 3d 614, 120 Cal Rptr 253 (1975); *King v. King,* 52 Ill App 3d 749, 367 NE2d 1358 (1977); *Moffett Bros. Partnership Estate v. Moffett,* 345 Mo 741, 137 SW2d 507 (1939). Those courts have reasoned either that denying fees is an effective sanction against violating the disciplinary rules or that, when an ethical violation has occurred, the attorney fee contract is unenforceable as violating the strong public policy that the rules reflect. A minority of jurisdictions have concluded that, at least where no *actual*

conflict has occurred, the court must consider all the facts and circumstances of the case to determine whether an attorney should be denied all or part of his fees. *Crawford v. Logan,* 656 SW2d 360, 365 (Tenn 1983); *see also Frank v. Bloom,* 634 F2d 1245, 1257 (10th Cir 1980). Relevant factors include whether the attorney's misconduct was intentional and whether it prejudiced his client. *Crawford v. Logan, supra,* 656 SW2d at 365.

**3.** We believe that the minority states the better view. It would be inappropriate to deny all fees in cases involving only unintentional or technical violations that cause the client no harm. Courts should be free to weigh all relevant factors in determining whether an attorney is entitled to the reasonable value of his services. Moreover, a case-by-case approach is consistent with Oregon's treatment of non-attorneys who have breached their fiduciary duties. *See, e.g., Cloud v. U.S. National Bank,* 280 Or 83, 570 P2d 350 (1977); *In re Patton's Estate,* 170 Or 186, 132 P2d 402 (1942); *Lowery v. Evonuk,* 95 Or App 98, 103, 767 P2d 489 (1989); *see also Restatement (Second) Trusts* § 243.[5] We hold that, when only a likely conflict of interest is involved, whether an attorney who has violated a disciplinary rule should receive any compensation for his services depends on all of the facts and circumstances, including whether the misconduct was intentional and whether it resulted in harm to the client.

**4.** Considering the circumstances in this case, we conclude that McMenamin and his firm should be denied any compensation for services rendered the estate.[6] McMenamin's

---

[5] In *Cloud v. U.S. National Bank, supra,* 280 Or at 93, the court summarized *Restatement (Second) Trusts* § 243:

"Whether or not compensation is denied is wholly within the discretion of the court. * * * Factors to be considered in the exercise of that discretion include whether the breach was intentional, negligent or without fault; whether the breach relates to part or all of the trust; and whether the trustee's services have been of value to the trust."

[6] The dissent argues that we should not deny all fees to the McMenamin firm because the trial court did not abuse its discretion in determining the reasonable value of the firm's services. That argument misses the point entirely. First, the effect of McMenamin's breach of fiduciary duty on his fee request is an entirely separate issue from that of whether his firm charged excessive fees. The trial court considered the issue of excessive fees; it did not consider the ethical violation at all.

More significantly, the dissent ignores what this case is really about. KAO hired the McMenamin firm to represent its interests. It then had to go to court to contest

violation was not a mere technical noncompliance with DR 5-105. Rather, he told Ferguson that he could represent the estate only if he first obtained approval from KAO's board, yet he failed to do that. Thus, his violation was intentional. Moreover, we are convinced that KAO sustained harm as a result of the dual representation. As previously discussed, McMenamin's duty to KAO was to minimize the expenses of the estate in order to maximize KAO's eventual recovery. However, the evidence establishes that the firm spent a large amount of time on account of the Laurelhurst Apartments, despite its knowledge that they were a detriment, rather than an asset, to the estate;[7] that it performed substantial amounts of nonlegal work for the personal representative, such as maintaining the estate's checkbook, making bank deposits, visiting an apartment house, negotiating to sell a boat and motor vehicles and searching the decedent's files for tax information; that it charged the estate for the attendance of two attorneys and a legal assistant at a deposition, with no showing that this duplication of services was necessary; that on occasion McMenamin billed the estate and other clients for the same periods of time; and that the firm made no objection to the valuations listed in the inventory, on which the personal representative's statutory fee would be based. Although the firm's strategy with respect to the Laurelhurst Apartments and certain of its billing practices *might* have been legitimate in other contexts, they undermined the best interests of KAO.

Moreover, reducing McMenamin's attorney fees to

---

excessive fees charged against its interest in the estate by its own attorney. Allowing McMenamin the reasonable value of his services will not alleviate KAO's expenses in litigating the matter. It also will not remedy the other harms that stemmed from McMenamin's failure to serve as a "watchdog" in KAO's behalf. The dissent would address this situation by limiting McMenamin to the fees that he should have charged. In our view, sanctions for ethical violations that cause harm to a client should be made of sterner stuff.

[7] With respect to the dissent's argument that there is no evidence to support this finding, we invite it to restudy the record. On September 24, 1981, the personal representative and his attorneys agreed to sell Montgomery the estate's entire interest in the apartments for $10,000. In the ensuing months, efforts to sell the apartments proved fruitless. On March 10, 1982, Montgomery offered to take the property back if the estate paid him $25,000 to settle his claims regarding late payments. McMenamin's firm knew early on that the apartments were a detriment, rather than an asset, to the estate, yet billed approximately 140 hours of attorney time *after* the settlement conference of March 10, 1982. It is reasonable to conclude that that expenditure of time was excessive.

their reasonable value will not remedy the harm that KAO sustained from the ethical violation. KAO's loss was not solely the result of unnecessary legal work or overcharges by McMenamin's firm; it also included losses from excessive personal representative fees and, indirectly, from Nepom's fees for defending against KAO's objections. Because those expenses might have been avoided had McMenamin acted solely in KAO's behalf, we deny the firm any fees.[8]

KAO next argues that the trial court erred in setting the personal representative's fee at $10,665.10, which it apparently calculated on the basis of the property valuations in the inventory. According to KAO, the valuations for the Laurelhurst Apartments and two lots near Prineville were excessive, resulting in an inflated fee for the personal representative. ORS 116.173(1) sets the method for calculating a personal representative's fee:[9]

"Upon application to the court a personal representative is entitled to receive compensation for services as provided in this section. * * * The compensation is a commission upon the whole estate, as follows:

"(a) Upon the property subject to the jurisdiction of the court, including income and realized gains:

"(A) Seven percent of any sum not exceeding $1,000.

"(B) Four percent of all above $1,000 and not exceeding $10,000.

"(C) Three percent of all above $10,000 and not exceeding $50,000.

"(D) Two percent of all above $50,000."

---

[8] The dissent suggests that, because KAO's board would probably have assented to the dual representation, McMenamin's ethical violation was not serious enough to warrant denial of all fees. However, DR 5-105 reflects a strong public policy to give clients in KAO's position the option of obtaining truly independent counsel, thus avoiding the type of problems that arose in this case. McMenamin knew of his duty to offer KAO that option, and he—not KAO—must assume the consequences of his failure to do so.

[9] ORS 116.173(2) provides:

"In all cases, such further compensation as is just and reasonable may be allowed by the court for any extraordinary and unusual services not ordinarily required of a personal representative in the discharge of a trust."

The trial court relied on ORS 116.173(1) and declined to provide further compensation pursuant to subsection (2).

**5.** ORS 116.173(1) bases the fee on the gross value of the estate at the time of settlement. Ordinarily, the trial court uses the values in the inventory as the basis for setting the fee. However, "the appraised value of the estate, as shown in the inventory, is only *prima facie* evidence of the value of the estate accounted for and is not conclusive for the purpose of fixing the representative's commission." *In re Feehely's Estate,* 182 Or 246, 251, 187 P2d 156 (1947). If the valuations of properties listed in the inventory are disputed, the court should consider other evidence of their actual value when the estate is settled. 182 Or at 252. *See also* 2 *Bancroft's Probate Practice* § 419 (2d ed 1950).

**6, 7.** In this case, although the inventory estimated the value of the Laurelhurst Apartments to be $285,000, an appraisal showed its worth on June 30, 1982, to be $158,000. Similarly, the Prineville lots that the inventory originally estimated to be worth $6,495 were described in the final account as having no value to the estate. Taking that evidence of the actual value of those properties into account, the gross value of the estate was $357,158.61.[10] Applying ORS 116.173(1) to that figure, the proper personal representative's fee is $7,773.17.[11]

**8.** KAO also argues that the court erred in allowing the personal representative $7,500 to pay for Nepom's defense to its objections. According to KAO, the court lacked authority to award that fee under ORS 116.183(2), which provides:

"A personal representative who defends or prosecutes any

---

[10] The record shows that the estate did not receive net income or realize gains from the Laurelhurst Apartments or the Prineville lots. *See* ORS 116.173(1)(a).

[11] KAO also argues that the personal representative failed to fulfill his duty because he delegated certain tasks to his attorneys, *e.g.,* maintenance of the estate checking account, negotiations regarding the sale of a boat and vehicles and searching decedent's files for tax returns. Although the personal representative could have done some of those things, he did not forfeit his right to receive a statutory fee by delegating them to his attorneys. For a discussion of issues related to an attorney's advising and acting for personal representatives, *see* Kwitman, "PLF Update," 49 *Oregon State Bar Bulletin* 25 (1988).

Despite the dissent's suggestion to the contrary, it is not inconsistent to approve the personal representative's delegation of these tasks, while denying McMenamin any fees for performing them. Under normal circumstances, the attorney would be compensated for performing them. These are not normal circumstances, and we do not deny McMenamin's fees on the basis that the tasks were improperly delegated to him.

proceeding in good faith and with just cause, whether successful or not, is entitled to receive from the estate necessary expenses and disbursements, including reasonable attorney fees, in the proceeding."

The personal representative defended against KAO's objections in good faith and with just cause. Thus, the trial court did not err in making the attorney fees award for Nepom's services.[12] *See Hunter v. Craft,* 287 Or 465, 600 P2d 415 (1979).

**9.** Finally, KAO contends that there was insufficient proof to support Nepom's fee, because he failed to keep time records. ORCP 68C(4)(a)(i), which does not apply here, requires a detailed time statement. *Parker v. Scharbach,* 75 Or App 530, 535, 707 P2d 85 (1985). While we are reluctant to sanction a lesser standard for attorney fees awarded pursuant to ORS 116.183(2), we cannot hold, as a matter of law, that the personal representative's request and the affidavit that Nepom submitted were insufficient *evidence of the time that he spent.* The trial court did not abuse its discretion in awarding the Nepom fee. *See Smith v. U.S. National Bank,* 47 Or App 967, 977, 615 P2d 1119 (1980), *rev den* 290 Or 302 (1981).

McMenamin law firm denied attorney fees and ordered to repay attorney fees previously disbursed; personal representative's fee modified to $7,773.17; otherwise affirmed.

**GRABER, P. J.,** concurring in part and dissenting in part.

I concur in the majority's opinion except as to McMenamin's fees, with respect to which the majority substitutes indignation for analysis. The majority states the correct test for considering a potential conflict of interest and a breach of fiduciary duty, such as those that existed here. I disagree, however, with its application of that test. I would modify the fee to $12,000 and, therefore, dissent in part.

Even though our review of the probate judgment is generally *de novo, Jacobs v. Jacobs,* 82 Or App 333, 336, 728 P2d 89 (1986), we should modify the attorney fee award only if the trial court abused its discretion in making it. *Smith v. U. S. National Bank,* 47 Or App 967, 977, 615 P2d 1119 (1980),

---

[12] KAO's arguments notwithstanding, our holding violates neither Article I, section 20, nor the Fourteenth Amendment.

*rev den* 290 Or 302 (1981). The majority concludes that fees should be denied altogether, because McMenamin "intentionally" violated DR 5-105, the time spent by the attorneys was excessive in view of the size and complexity of the estate, the attorneys did work that the personal representative should have done, they duplicated their efforts, they failed to litigate the Laurelhurst Apartments dispute in a cost effective manner, and they billed KAO and other clients for the same hours. Those conclusions suffer from two defects.

First, at least in part, they are unsupported by the record. For example, the majority states that "the evidence establishes that the firm spent a large amount of attorney time on account of the Laurelhurst Apartments, despite its knowledge that they were a detriment, rather than an asset, to the estate." 97 Or App at 127. The evidence *does* show that the attorneys spent much time on the Laurelhurst litigation, but it does not show that, *when that time was spent,* the attorneys knew that it was a worthless cause. In fact, much of the time was spent, albeit unsuccessfully, on trying to salvage some value from the apartments, which would have been to KAO's benefit.

Similarly, the majority concludes that it was inappropriate to compensate McMenamin for performing "nonlegal work for the personal representative, such as maintaining the estate's checkbook, making bank deposits, visiting an apartment house, negotiating to sell [the decedent's] boat and motor vehicles, and searching the decedent's files for tax information." 97 Or App at 127. The majority *approves* of the personal representative's delegation of those tasks to the attorney, *see* 97 Or App at 128 n 8, but at the same time it *disapproves* of paying the attorney to perform the delegated tasks. The properly delegated tasks should be compensated. If, as the majority says, it does not deny fees on the basis of improper delegation, then it is baffling why that factor is included in the list of "harms" that justify the denial of fees.

The majority also writes that "KAO's loss * * * included losses from excessive personal representative fees and, indirectly, Nepom's fees for defending against KAO's objections." Apparently, the majority assumes that an attorney who did *not* have a potential conflict of interest would have achieved a lower representative's fee and would have

eliminated the need for KAO's objections (and, therefore, Nepom's fee for defending against them). Those suppositions are entirely too speculative to support the denial of all fees to McMenamin. Moreover, even assuming that the *entire* Nepom fee and the *entire* personal representative's fee should be deducted, the fee award to McMenamin would be about $10,000.

The second flaw in the majority's reasoning is more fundamental. It is true that many of McMenamin's billing practices in this case were far from exemplary. However, *the trial court ruled on those arguments* in awarding only about two-thirds of the fee requested. The court did not abuse its discretion with respect to those issues.[1]

The only thing that the trial court failed to consider in exercising its discretion was McMenamin's alleged conflict of interest, because the court concluded that there was no actual or potential conflict. As does the majority, I disagree. Nonetheless, in my view, our task is to consider *de novo* the effect *only* of McMenamin's breach of fiduciary duty on his fee request because, as to other objections, the trial court did not abuse its discretion. The court considered the arguments about overcharging in a different context, but it considered them nonetheless and eliminated offending portions of the fee request.

KAO selected the McMenamin firm. It continued to use that firm *after* learning of the potential conflict of interest. Had McMenamin taken the one extra step of obtaining the approval of KAO's board for the dual representation, there would be no basis to reduce the fee award further. KAO does not assert that it suffered or could have suffered any damage (apart from the fee award itself) as a result of the conflict. Its own expert testified that the services that an "ideal" attorney should have rendered had a reasonable value of $10,000 to $12,000. That is, had the personal representative hired a different attorney, KAO admits that a fee of up to $12,000 would be reasonable for the services actually rendered, even in the light of all the factors upon which the majority now relies to

---

[1] KAO also argues that the McMenamin firm could not bill for time spent by legal assistants and clerks, relying on ORS 116.183(1). However, "customary fees in the community for similar services" include fees for legal assistants and clerks. The trial court properly could include such amounts.

deny fees altogether. The majority gives KAO a windfall to that extent.

KAO's real complaint seems to be its disappointment over the value of the Laurelhurst Apartments, for which it had great but unjustified expectations. That disappointment is not an appropriate basis to deny fees. In order to assure that KAO suffers no financial harm from the breach of fiduciary duty, I would reduce the fee award to the McMenamin firm from $25,000 to $12,000.