On intervenor's petition for reconsideration filed November 9, 1989, petition for reconsideration allowed, former opinion (97 Or App 120, 775 P2d 1383) modified and adhered to as modified February 14, 1990

In the Matter of the Estate of
Ronald K. Ragan, Deceased.

KIDNEY ASSOCIATION OF OREGON, INC.,
*Appellant,*

*v.*

FERGUSON,
*Respondent,*

McMENAMIN,
*Intervenor.*

(135-858; CA A45750)

786 P2d 754

David Gernant, Portland, for petition.

Morton A. Winkel, Portland, *contra.*

John H. Draneas, Portland, Thomas C. Howser, Ashland, Peter R. Jarvis, Portland, Campbell Richardson, Portland, and William F. Schroeder, Vale, filed a brief *pro se* as *amici curiae.*

No appearance for respondent.

Before Graber, Presiding Judge, and Rossman and Edmonds, Judges.

EDMONDS, J.

Graber, P. J., concurring in modifications.

## EDMONDS, J.

Intervenor and the *amici* petition for review of our previous decision, 97 Or App 120, 775 P2d 1383 (1989), which we treat as a petition for reconsideration. ORAP 9.15. We allow reconsideration and adhere to our previous holding.

In our opinion, we said:

"McMenamin informed Marx, president and chairman of the board of KAO, of the personal representative's request (for consent to the potentially conflicting representation), and Marx approved of the dual representation. The record does not show that Marx had authority to act on behalf of the board, however." *Kidney Association of Oregon v. Ferguson, supra,* 97 Or App at 123 n 3.

We agree with the *amici* that, as a general rule, officers of a corporation may have apparent if not actual authority to bind the Board in approving a dual representation by an attorney of the corporation and a third party. *See* ORS 65.374; *former* ORS 60.374. However, Marx did not approve the dual representation. Instead, he informed McMenamin that, although he did not object to the dual representation, McMenamin should present the matter to the Board for approval. We delete note 3 and replace it with this:

"McMenamin testified that he called Marx and asked whether he would object to McMenamin's firm representing both the personal representative and KAO. Marx testified that he did not object, but that the matter should be presented to the Board at the next meeting. McMenamin testified that he appeared at a Board meeting and asked whether anyone objected to his serving as the attorney for the personal representative. He testified that after discussion, consent was given. With two exceptions, all of the Board members present at the meeting testified that they did not know of the dual representation. The minutes for the meeting contain no mention of the discussion. In light of this evidence, we reject McMenamin's assertion that he obtained approval from the Board."

We also said:

"The personal representative asserts that he and KAO had common goals: to ensure a prompt administration of the estate and to maximize the gift to the decedent's beneficiary. However, although initially there was no actual conflict between the interest of KAO and the personal representative,

their interests did diverge. * * * Because McMenamin faced a likely conflict of interest, he should have obtained consent to the dual representation. By failing to do so, he breached his fiduciary duty to KAO."

Petitioners argue that a theoretical conflict, by itself, is insufficient to trigger the requirements of disclosure and consent. *See In re Samuels/Weiner,* 296 Or 224, 230, 674 P2d 1166 (1983); *former* DR 5-105.[1] Intervenor argues that there was no actual or likely conflict of interest at any time that McMenamin represented both clients. The *amici* submit that it cannot be determined from our opinion what event created a "likely conflict of interest."

■ A "likely conflict" of interest exists when the circumstances are such that the lawyer's independent professional judgment is likely to be adversely affected. Because DR 5-105 applies to both the undertaking and continuing of employment, the ethical obligation of a lawyer to multiple clients is subject to change and a lawyer is charged with the responsibility of complying with DR 5-105 accordingly. *See In re Johnson,* 300 Or 52, 58-61, 707 P2d 573 (1985).

■ In 1981, the estate was initially valued at approximately $490,000 and, at the onset of McMenamin's representation of the personal representative, there was no material or

---

[1] At the time of the hearing *former* DR 5-105 was in effect. It provides, in relevant part:

"Refusing to Accept or Continue Employment if the Interest of Another Client May Impair the Independent Professional Judgment of the Lawyer.

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105 (C).

"(B) *A lawyer shall not continue employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client,* except to the extent permitted under DR 5-105 (C).

"(C) In the situations covered by DR 5-105 (A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." (Emphasis supplied.)

Currently, DR 5-105(A)(2) provides:

"A 'likely conflict of interest' exists in all other situations in which the objective personal, business or property interests of the clients are adverse. A 'likely conflict of interest' does not include situations in which the only conflict is of a general economic or business nature."

reasonable expectation of a divergence of interest between the personal representative and the beneficiary. However, as we said in our original opinion, the situation changed. Two years later, McMenamin appeared *ex parte* before the probate court to obtain an order approving settlement of litigation concerning an asset of the estate. The court asked why expenses would consume the whole estate and McMenamin stated:

> "What I'm saying is when the costs of administration are paid or partially paid, there will be nothing left. The sole beneficiary of this estate is the Kidney Association of Oregon. There will be nothing left for them [sic]."

Between 1981 and 1983, the estate had become embroiled in litigation involving the major asset of the estate. The estate was sued for $100,000 in delinquent payments and late payment penalties. It also became evident that the asset was worth far less than it was originally valued. Those events sufficed to put McMenamin on notice that his independent judgment would likely be affected because of the potential liabilities of the estate and the attendant legal expenses incurred by the estate and payable to McMenamin's firm. Those liabilities, if realized, could drain the estate of any assets that would inure to KAO. We hold that McMenamin was under an ethical obligation to notify KAO and the estate of a likely conflict of interest and obtain their consents to his continued representation of them when he became aware of the pending litigation and potential diminishment in value of the major asset of the estate.[2]

Petition for reconsideration allowed; former opinion modified and adhered to as modified.

**GRABER, P. J.,** concurring in modifications.

The modifications that the majority makes on reconsideration do not affect the issues covered in my earlier concurring and dissenting opinion in this case. *Kidney*

---

[2] The remainder of petitioners' contentions on reconsideration involve issues discussed in our original opinion or do not merit discussion except for one. The *amici* urge us to explain what was "improper" about the fees for the non-legal work that was delegated by the personal representative to the McMenamin firm. As we said in our original opinion, the delegation of those tasks in general is not improper. An attorney can do non-legal work at the request of the personal representative and charge the usual fees. However, because of McMenamin's likely conflict of interest, it was inappropriate for him to receive payment for either legal or non-legal work.

*Association of Oregon v. Ferguson,* 97 Or App 120, 130, 775 P2d 1383 (1989). Accordingly, I adhere to that opinion.