Argued and submitted July 10, 1990, decision of Court of Appeals reversed in part;
otherwise affirmed December 31, 1992

In the Matter of the Estate of
Ronald K. Ragan, Deceased.

## KIDNEY ASSOCIATION
## OF OREGON, INC.,
a corporation,
*Respondent on Review,*

*v.*

Randall E. FERGUSON,
Former Personal Representative,
David APPLE, Successor Personal Representative,
of the Estate of Ronald K. Ragan, Deceased,
*Respondent,*

*and*

Robert W. McMENAMIN,
*Petitioner on Review.*

(CC 135-858; CA A45750; SC S36657)

843 P2d 442

David Gernant, Portland, filed the petition and argued the cause for Petitioner on Review.

Morton A. Winkel, Portland, filed a response and argued the cause for Respondent on Review.

John H. Draneas, Portland, Thomas C. Howser, Ashland, Peter R. Jarvis, Portland, Campbell Richardson, Portland, and William F. Schroeder, Vale, filed a brief *in propria persona* as *amici curiae*.

Before Peterson, Chief Justice,** and Carson,*** Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

CARSON, C. J.

---

** Chief Justice when case was argued.
*** Chief Justice when decision rendered.

## CARSON, C. J.

Kidney Association of Oregon, Inc. (KAO), sole beneficiary of an estate, objected to the final accounting and petition for distribution of the estate, alleging that petitioner on review (petitioner), a probate lawyer who represented the estate's personal representative, violated a disciplinary rule and, therefore, should receive no fees from estate assets. The probate court found no ethical violation, but ordered payment of attorney fees to petitioner in an amount substantially lower than the fees that petitioner first requested. On appeal from the probate court decision, the Court of Appeals found a disciplinary rule violation, denied attorney fees, and ordered repayment to the estate of the attorney fees previously distributed.[1] *Kidney Association of Oregon v. Ferguson*, 97 Or App 120, 775 P2d 1383 (1989), *modified* 100 Or App 523, 786 P2d 754 (1990). Petitioner, who had intervened in the Court of Appeals, petitioned for review in this court.[2]

Upon review, we reverse the decision of the Court of Appeals as to attorney fees and reinstate the attorney fees awarded by the probate court. Otherwise, the Court of Appeals is affirmed.

### FACTS

We have gleaned the pertinent facts from an extensive record. Except where noted, the recited facts are undisputed.

Ronald K. Ragan died in August 1981, leaving his entire estate to KAO, a charitable organization. Ragan's will named Randall Ferguson as personal representative. At the time of Ragan's death, petitioner was a Portland lawyer serving on KAO's board of directors.[3]

The personal representative notified KAO that KAO was the sole beneficiary of Ragan's estate and asked KAO to

---

[1] The Court of Appeals modified the fee of the personal representative (which issue is not before us) and otherwise affirmed the decree of final distribution of the probate court.

[2] *Amici curiae*, five lawyers who have declared an "active interest in legal ethics matters and/or trusts and estates matters," also urged review.

[3] Petitioner's term of service on KAO's board encompassed the calendar years 1981 and 1982.

recommend an Oregon lawyer to represent the personal representative during probate. KAO's president recommended petitioner. Petitioner sought formal consent from KAO's president and executive director before he agreed to represent the personal representative.[4] Probate was initiated in August 1981.

The estate's assets included several parcels of real property. One parcel, the Laurelhurst Apartments, had been held by the decedent for less than a year. The parcel was in such a state of disrepair that it was condemned by the City of Portland soon after the initiation of probate.[5] Liquidating the parcel presented extensive legal problems stemming from a dispute with the former owners, who had sold it to the decedent by land sale contract.[6] Over a period of two and one-half years, petitioner expended substantial time negotiating settlement of the dispute and charged the estate accordingly. The $37,000 legal fee that petitioner requested represented the estate's single largest administrative expense.

In late 1983, petitioner informed KAO and the probate court that the costs of administration would deplete the estate, leaving almost nothing for distribution to KAO. The personal representative submitted the final accounting for the estate to the probate court in April 1984. KAO filed a

---

[4] The president and executive director each consented *conditionally*, citing a need for approval by the full board of directors. Whether the full board granted consent, considered the potential for conflict, or even knew that petitioner represented the estate, is disputed.

[5] The value of the Laurelhurst Apartments has been sharply disputed. According to the inventory submitted to the probate court, the market value of the parcel was the decedent's 1980 purchase price of $285,000. According to the 1982 appraisal accepted by the Court of Appeals in reducing the personal representative's fee, the value was $158,000. *Kidney Association of Oregon v. Ferguson*, 97 Or App 120, 129, 775 P2d 1383 (1989), *modified* 100 Or App 523, 786 P2d 754 (1990). In any event, the value of the estate's interest in the parcel, not specified in the briefs or the record, never approached the market value stated in the inventory. The parcel was highly mortgaged and needed capital improvements to make it habitable. The decedent, and a partner whom decedent later bought out, had invested $30,000 at the time of purchase and may or may not have increased that investment before the decedent's death. Efforts to sell the estate's interest in the parcel were unsuccessful, although the personal representative offered it to the former owners for $10,000 two weeks after the initiation of probate and actively marketed it for many months thereafter.

[6] In an effort to end the dispute, the estate purported to convey the apartments back to the former owners in March 1982. Subsequently, the former owners sued the estate for approximately $100,000 for breach of the land sale contract. After extensive negotiations, the legal action finally was settled in December 1983.

timely objection to the final accounting and petition for distribution of the estate. Among other things, KAO asserted that petitioner should be paid no fees from the estate because he violated DR 5-105[7] by not informing KAO's board of a likely conflict and by not obtaining the board's consent to represent or to continue to represent the personal representative.[8]

After a three-day hearing, the probate court concluded that petitioner did not violate DR 5-105 because the personal representative and beneficiary had what that court called a "unity of interests." The probate court reduced the requested fee for other reasons and ordered a $25,000 payment from the estate to petitioner.[9] On *de novo* review, the

---

[7] DR 5-105 governs lawyers representing multiple clients with conflicting interests. In 1981-83, the time of petitioner's representation of the Ragan estate, it provided, in part:

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

The rule since has been amended, but its effect essentially is the same. The text of present DR 5-105 is set out, in part, *infra* at note 13.

[8] There is considerable confusion about when the likely conflict allegedly arose. KAO contends *in its appellate brief* that the likely conflict developed on September 24, 1981, just four weeks after the will was admitted to probate, when the personal representative offered to sell the Laurelhurst Apartments back to the former owners for less than the decedent had paid. KAO contended *in the probate court* that the conflict became likely on March 10, 1982, when the personal representative refused to accept an unfavorable settlement offer from the former owners of the apartments. *At oral argument before this court*, KAO adopted the Court of Appeals' position that the conflict became likely at the unspecified time when it became apparent that costs and attorney fees would consume the estate. *See Kidney Association of Oregon v. Ferguson, supra* note 5, 100 Or App at 527.

[9] KAO argued that the reasonable value of the legal work performed was only $10,000 to $12,000. The probate court set the fee award after it oversaw the case for two years and later heard several days of expert testimony. ORS 116.183 permits a probate court to determine the reasonableness of attorney fees after weighing numerous factual considerations. On this record, KAO has not demonstrated that the probate court abused its discretion in determining the amount of a reasonable

Court of Appeals reversed the probate court, concluding that petitioner knowingly had violated DR 5-105, that the violation harmed KAO, and that petitioner and his firm thus should be denied any compensation for services rendered the estate. *Kidney Association of Oregon v. Ferguson, supra*, 97 Or App at 126-27.

## AUTHORITY TO REDUCE FEES

Before discussing whether petitioner's conduct in this case violated disciplinary rules or otherwise breached the professional duty of a lawyer to a client, we shall clarify the authority under which a court may reduce or deny a lawyer's fee and distinguish that authority from the authority to enforce disciplinary rules.

Rules regulating professional conduct of lawyers (disciplinary rules) are formulated by the Board of Governors of the Oregon State Bar, approved by members of the Bar, and adopted by this court; they have the status of law. ORS 9.490. Enforcement of the rules is reserved to this court and the Disciplinary Board appointed by the court.[10] ORS 9.534. No other court has jurisdiction to investigate, review, or sanction disciplinary rule violations, as such.

In some circumstances, courts other than the Supreme Court do have jurisdiction to review and allow, reduce, or deny a lawyer's request for fees. Although the conduct reviewed in a disciplinary context may be similar to the conduct reviewed in a request for attorney fees, in the latter context, the focus of the court is on the nature and quality of service a lawyer has rendered to the client.

---

fee. *See In re Lachmund's Estate*, 179 Or 420, 439, 170 P2d 748 (1946) (proper scope of review for amount of attorney fees allowed in probate case is abuse of discretion).

[10] Complaints about a lawyer's conduct may be investigated by a local professional responsibility committee and reviewed by the State Professional Responsibility Board (SPRB). ORS 9.532. The SPRB has authority, *inter alia*, to dismiss complaints, issue admonitions, or institute disciplinary proceedings against a lawyer. BR 2.3(b)(3)(A). Barring extraordinary circumstances, the SPRB's dismissal of a complaint against a lawyer is final. *See generally In re Haws*, 310 Or 741, 750, 801 P2d 818 (1990) (describing disciplinary procedures).

At the request of KAO, the Multnomah County Local Professional Responsibility Committee and the SPRB independently investigated KAO's allegations and concluded that petitioner violated no disciplinary rules.

## RELATIONSHIP BETWEEN
## DISCIPLINARY RULES AND FEES

■    A circuit court has authority to review the reasonableness of a lawyer's fees in a probate matter. ORS 116.183(1).[11] Among factors that may be considered in determining the reasonableness of a fee are the lawyer's experience and skill, the result obtained, and "such other factors as may be relevant." *Id.* Whether the lawyer breached a professional duty may be a relevant factor and some (though certainly not all) aspects of a lawyer's duty to a client are described by the disciplinary rules. For that reason, the disciplinary rules may, to some extent, illuminate a court's inquiry into whether a lawyer's fee should be reduced to reflect a breach of a duty of loyalty.[12] This court has noted the applicability of disciplinary rules to non-disciplinary contexts:

---

[11] ORS 116.183(1) provides:

"A personal representative shall be allowed in the settlement of the final account all necessary expenses incurred in the care, management and settlement of the estate, including reasonable fees of appraisers, attorneys and other qualified persons employed by the personal representative. * * * An award of reasonable attorney fees under this section shall be made after consideration of the customary fees in the community for similar services, the time spent by counsel, counsel's experience in such matters, the skill displayed by counsel, the excellence of the result obtained, any agreement as to fees which may exist between the personal representative and the counsel of the personal representative, the amount of responsibility assumed by counsel considering the total value of the estate, and such other factors as may be relevant. No single factor shall be controlling."

[12] In a parallel context, this court has held that a lawyer's violation of disciplinary rules does not, in itself, establish the lawyer's negligence, *O'Toole v. Franklin*, 279 Or 513, 522-24, 569 P2d 561 (1977), and that conduct violating a disciplinary rule does not give rise to a private claim, *Bob Godfrey Pontiac v. Roloff*, 291 Or 318, 630 P2d 840 (1981). This is the common rule across the nation. 291 Or at 330. *See Lazy Seven Coal Sales v. Stone & Hinds*, 813 SW2d 400 (Tenn 1991) (citing cases). The Supreme Court of the State of Washington has gone further by disallowing any reference to disciplinary rules in a legal malpractice case because of the court's conclusion that the rules were not intended to set a standard for civil liability. *Hizey v. Carpenter*, 119 Wash 2d 251, 830 P2d 646 (1992).

In a similar context, intermediate appellate courts in California have contrasted the use of disciplinary rules as evidence of negligence with use of the rules as evidence of a lawyer's breach of a fiduciary duty and concluded, as we do, that although the rules do not establish the standard of care in a negligence action, the rules *do*, in part, describe a lawyer's fiduciary duty to his client. *Mirabito v. Liccardo*, 4 Cal App 4th 41, 5 Cal Rptr 2d 571, 573 (1992) ("[Disciplinary] rules, together with statutes and general principles relating to other fiduciary relationships, all help define the duty component of the fiduciary duty which an attorney owes to his client."); *David Welch Co. v. Erskine & Tulley*, 203 Cal App 3d 884, 250 Cal Rptr 339 (1988).

"[M]any duties of professional persons toward their patients, clients, or customers exist independently of the professions' special disciplinary codes, and courts know the duties of lawyers as members of the same profession even though only this court administers the Code of Professional Responsibility.

"A court's order, therefore, may hold a lawyer as much as, say, a broker, an accountant, or a bank to some fiduciary or other duty that, for lawyers, is covered by the Disciplinary Rules." *State ex rel Bryant v. Ellis*, 301 Or 633, 638, 724 P2d 811 (1986).

One of the disciplinary rules prohibits a lawyer, in most instances, from representing two clients whose interests conflict. DR 5-105. However, representing opposing clients was recognized as improper conduct long before the existence of disciplinary rules. *See Silbiger v. Prudence Bonds Corp.*, 180 F2d 917, 920 (2d Cir) ("Certainly by the beginning of the Seventeenth Century it had become common-place that an attorney must not represent opposed interests; and the usual consequence has been that he is debarred from receiving any fee from either, no matter how successful his labors" (footnote omitted)), *cert den* 340 US 831 (1950). The Supreme Court of the United States recognized fee denial as a consequence of a lawyer's representing conflicting interests 50 years ago in *Woods v. City National Bank and Trust Co.*, 312 US 262, 61 S Ct 493, 85 L Ed 820 (1941).

■ This court has not addressed the issue whether fee reduction or denial is appropriate for lawyers with a conflict of interest. Consequently, the Court of Appeals considered the law of other jurisdictions and formulated an answer that "whether an attorney who has violated a disciplinary rule should receive any compensation for his services depends on all of the facts and circumstances, including whether the misconduct was intentional and whether it resulted in harm to the client." *Kidney Association of Oregon v. Ferguson, supra*, 97 Or App at 126. The inquiry fashioned by the Court of Appeals effectively would authorize the direct enforcement of disciplinary rules by lower courts. As noted above, lower courts, including the Court of Appeals, do not have the authority to determine disciplinary rule violations, as such, and to impose a sanction for the violation thereof.

■     In circumstances such as this one, however, a court, any court, that has authority to set or approve the award of reasonable attorney fees, may consider whether the lawyer has breached a fiduciary duty owed to the client in determining the appropriate fee. A breach of fiduciary duty may be the result of a lawyer's simultaneously representing two or more clients with a conflict of interest, the consequence of which could be a reduction of a fee or outright denial of a fee.

When a court reduces or denies attorney fees as a consequence of a lawyer's breach of fiduciary duty, it is a reflection of the limited value that a client receives from the services of an unfaithful lawyer. *See* Restatement (Second) of Trusts § 243, comment *a* ("When the compensation of the trustee is reduced or denied, the reduction or denial is not in the nature of an additional penalty for the breach of trust but is based upon the fact that the trustee has not rendered or has not properly rendered the services for which compensation is given."). Fifteen years ago, this court adopted a test to determine whether fees should be denied when a trustee breaches the trustee's duty of loyalty:

> "Plaintiff contends that, because of the breach of trust, compensation should be denied for the trustee's services from the date of the breach. Whether or not compensation is denied is wholly within the discretion of the court. Restatement of Trusts (Second) § 243. Factors to be considered in the exercise of that discretion include whether the breach was intentional, negligent or without fault; whether the breach relates to part or all of the trust; and whether the trustee's services have been of value to the trust." *Cloud v. U.S. National Bank*, 280 Or 83, 93, 570 P2d 350 (1977).

■     In the determination whether a lawyer breached a fiduciary duty to a client, the court may consider the standard of conduct prescribed by the disciplinary rules. *State ex rel Bryant v. Ellis, supra*, 301 Or at 638. But, it is the breach of fiduciary duty owed to a client, rather than a violation of a disciplinary rule, that may result in a reduction or loss of a fee. The disciplinary rules, where relevant, are no more than one potential reference source for analyzing a lawyer's duty. With that in mind, we turn to an analysis of petitioner's conduct.

## PETITIONER'S CONDUCT

DR 5-105 is the "conflict of interest" rule applicable to members of the Oregon State Bar. It describes a lawyer's duty of loyalty in situations where that loyalty could be divided by competing interests. Among other things, the rule addresses a lawyer's simultaneous representation of two clients whose interests are, or likely will be, adverse. Representing clients in actual conflict is barred by the rule; representing clients whose interests are *likely* to conflict is permitted, but only with the informed consent of both clients. DR 5-105. KAO alleged that petitioner had both actual and likely conflicts. The Court of Appeals decided that he had a *likely* conflict.[13] *Kidney Association of Oregon v. Ferguson, supra,* 97 Or App at 125. As noted above, an analysis of petitioner's conduct under DR 5-105 is relevant to this case only because representation of multiple clients in violation of the disciplinary rules may be evidence of a breach of loyalty.

■ Tracking the methodology used in discipline cases, and the conduct proscribed by DR 5-105, the first step in analyzing whether a lawyer, in the representation of clients with a potential conflict of interest, actually breached a fiduciary duty to a client, is to determine whether the lawyer simultaneously represented the clients with allegedly opposing interests. We conclude that petitioner represented the personal representative and the beneficiary (KAO) concurrently during the administration of the Ragan estate.

■■ The existence of a lawyer-client relationship primarily is determined by the reasonable expectation of the client

---

[13] The terminology "likely conflict" was not a part of the 1981-83 disciplinary rules, although the concept was implicit in *former* DR 5-105. *See In re Johnson,* 300 Or 52, 58-60, 707 P2d 573 (1985). Later relevant changes in DR 5-105 reflect an evolution of terminology rather than substance. We apply the rules as they existed at the time of the alleged violation but use the present terminology for ease of reference. *See supra* note 7 (setting out text of *former* DR 5-105). DR 5-105 now provides, in part:

"(A) A conflict of interest may be actual or likely.

"(1) An 'actual conflict of interest' exists when the lawyer has a duty to contend for something on behalf of one client that the lawyer has a duty to oppose on behalf of another client.

"(2) A 'likely conflict of interest' exists in all other situations in which the objective personal, business or property interests of the clients are adverse. A 'likely conflict of interest' does not include situations in which the only conflict is of a general economic or business nature."

that the lawyer will perform legal work in the client's behalf. *In re Weidner*, 310 Or 757, 770, 801 P2d 828 (1990). The existence of the relationship does not depend upon payment of fees and can be inferred by conduct of the parties. *In re Mettler*, 305 Or 12, 18, 748 P2d 1010 (1988). Throughout his term of service on the KAO board, petitioner regularly advised KAO on legal matters, including the probate of estates in which KAO was a beneficiary. One of his partners had a similar relationship with KAO when petitioner's term ended. Although KAO did not pay petitioner or his partner to be its lawyer, we infer that petitioner's firm had a lawyer-client relationship with KAO in respect of the Ragan estate through most of, if not all, the estate's administration. The existence of a lawyer-client relationship between petitioner and the personal representative is not disputed.

The second step in analyzing the existence of a conflict of interest is to assess the adversity of the interests. We disagree with the Court of Appeals that there was a "likely conflict" between petitioner's two clients during the administration of the estate. Petitioner's clients were, respectively, the personal representative and the sole beneficiary of a single estate. By definition, a personal representative owes a duty of loyalty to the beneficiary's interests and shares the common goal of prompt and efficient distribution of estate assets. *See* ORS 114.265 (a personal representative has a statutory duty to "preserve, settle and distribute the estate * * * as expeditiously and with as little sacrifice of value as is reasonable under the circumstances"). It was conceivable at the outset that a conflict could develop, but a theoretical potential for conflict is not a *likely* conflict.[14] *See In re Johnson*, 300 Or 52, 58-60, 707 P2d 573 (1985) (distinguishing among actual, likely, and unlikely conflicts). A lawyer need not assume that a client is likely to breach a duty nor need a lawyer foresee all possible future conflicts among clients whose interests are common at the time of representation. *In re Samuels/Weiner*, 296 Or 224, 674 P2d 1166 (1983).

Of course, a conflict of interest may develop at any time during a lawyer's representation of two clients. *In re*

[14] Absent a likely conflict, the consent of KAO's officers to petitioner's representation of the personal representative was unnecessary. Accordingly, we do not address the adequacy of that consent.

*Johnson, supra*, 300 Or at 59-60. The Court of Appeals concluded that a likely conflict arose "when [petitioner] became aware of the pending litigation [initiated against the estate by the former owners of the Laurelhurst Apartments] and potential diminishment in value of the major asset of the estate." *Kidney Association of Oregon v. Ferguson, supra*, 100 Or App at 527. The Court of Appeals reasoned that a likely conflict existed when petitioner knew that legal expenses incurred by the estate to settle the litigation "could drain the estate of any assets that would inure to KAO." *Id.* Thus, under the analysis of the Court of Appeals, a personal representative's interest in paying an estate's bills conflicts with a beneficiary's interest in proper distribution of the estate. This cannot be correct.

A personal representative is a fiduciary of an estate's beneficiaries. The representative's personal interest in the estate is limited to receipt of a statutorily-established fee based on the value of the estate. *See* ORS 116.173 (formula for compensation of personal representative). If a personal representative's negligent or intentional act or omission, or his unauthorized self-dealing, causes a loss to the estate, the personal representative is personally liable. ORS 116.063(3). No self-dealing, negligence, or wrongful conduct of the personal representative has been alleged in this case. The personal representative is *not* liable for declining asset values or escalating expenses for which the personal representative bears no fault. ORS 116.073(2). We conclude that, in this case, the estate's unexpectedly-increased expenses were caused by factors outside the control of the personal representative and were not attributable to the personal representative's conduct. Therefore, the personal representative's approval of the expenses related to the dispute over the Laurelhurst Apartments did not pit his interests against the interests of KAO.

Petitioner's two clients shared a common interest in maximizing distribution to KAO. This did not change when the costs of estate administration increased. As the SPRB concluded, petitioner did not violate DR 5-105. Moreover, we conclude that petitioner did not breach a duty to the Ragan estate or to the personal representative during the administration of the estate.

The probate court reduced petitioner's fees in this case after considering the factors listed in ORS 116.183. The probate court was not obliged to further reduce fees or deny them because of an alleged, but unsubstantiated, breach of loyalty. The probate court properly exercised its discretion in allowing petitioner's attorney fees.

## CONCLUSION

Petitioner did not violate DR 5-105 by representing KAO and the personal representative in administration of the Ragan estate. Even if he had violated a disciplinary rule, a direct sanction for the violation by the probate court would have been inappropriate. Disciplinary rules are enforceable only by this court and the Disciplinary Board appointed by this court. Because the test announced by the Court of Appeals was framed as a sanction for disciplinary rule violations, it was in error.

Courts with authority to review and allow a lawyer's fees have authority to address breaches of that lawyer's duty of loyalty to the lawyer's client by denying part of or all the fees. That authority may be exercised at the court's discretion after consideration of the facts. *See Cloud v. U.S. National Bank, supra,* 280 Or at 93 (setting out factors to be considered). Certain disciplinary rules describe some aspects of a lawyer's duty of loyalty and may be used to inform an analysis of a lawyer's conduct, although violation of a rule is not directly equivalent to a breach of duty. In this case, the probate court properly reviewed petitioner's conduct and did not abuse its discretion in allowing payment of reduced fees from the estate. Contrary to the conclusion of the Court of Appeals, the circumstances did not warrant denial of all fees.

The decision of the Court of Appeals is reversed as to attorney fees and otherwise affirmed.