Argued and submitted September 25, affirmed November 22, 1989

COLLATT,
*Appellant,*

*v.*

COLLATT et al,
*Respondents.*

(88CV-0384; CA A50535)

782 P2d 456

Michael Duane Brown, Salem, argued the cause for appellant. On the brief was Norman K. Winslow, Salem.

Respondents waived appearance.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

■    After plaintiff·brought an action for conversion and "duress," defendants moved to disqualify plaintiff's counsel (Winslow). The trial court granted the motion and dismissed his complaint when plaintiff declined to proceed. Plaintiff appeals the judgment of dismissal, assigning as error the trial court's order of disqualification.[1] We affirm.

We take the facts from plaintiff's brief, the affidavits of the parties and Winslow's deposition.[2] Defendants James and Alice Collatt are plaintiff's parents. Winslow is his attorney. In 1982, Winslow organized a closely-held corporation, known as Collatt's Pacific Industries (CPI), for Koopman, plaintiff's brother-in-law. Approximately two months later, plaintiff replaced Koopman as president and sole stockholder.

On February 23, 1983, Winslow received a telephone call from Michael Collatt, plaintiff's brother, requesting him to prepare documents that would transfer all of the CPI stock and certain other assets to Alice. After confirming plaintiff's willingness to sign the documents, Winslow prepared the documents, and the parties met in his office the next day. Under Winslow's supervision, a corporate meeting was held for the purpose of effecting the transfer, and plaintiff and his wife signed the documents. Michael, acting on behalf of his mother, paid Winslow for his services. According to plaintiff, Winslow resigned as statutory agent for CPI immediately following the meeting and, other than forwarding some background information on the corporation, had no other contact with Michael, Alice or CPI.

In 1987, plaintiff consulted Winslow about the 1983 transaction. Pursuant to plaintiff's request, Winslow then filed a complaint against defendants. It alleged that plaintiff had transferred the CPI stock and other assets to Alice only because his father had threatened to kill him if he did not; that, after the transfer, Alice delivered the assets and business to James; that James alone then filed a bankruptcy petition, omitting from the schedules the properties that plaintiff had

---

[1] Courts have authority to disqualify an attorney in order to restrain him from a prejudicially improper act of legal representation. *State ex rel Bryant v. Ellis,* 301 Or 633, 724 P2d 811 (1986).

[2] Defendants did not file a brief.

transferred; that James then created a new corporation, defendant National Roto-Tech Systems, Inc., to which he transferred those properties; and that James later sold National Roto-Tech Systems to defendant Quadel Industries.

■ The issue is whether Winslow's participation in the transfer of CPI stock in 1983 disqualifies him from representing plaintiff in this action for conversion and duress. We hold that it does.

As the Supreme Court noted in *In re Brandsness,* 299 Or 420, 426, 702 P2d 1098 (1985), "[W]hen a lawyer represents a client who is in a position adverse to a former client in a matter that is significantly related to a matter in which the lawyer represented the former client," the lawyer engages in a "closed file" conflict, thus violating DR 5-105.[3] The court set forth this three-part test for determining when such a conflict exists:

"1. The adverse party is one with whom the [lawyer] had a lawyer-client relationship;

"2. The representation of the present client puts the [lawyer] in a position adverse to the former client; and

"3. The present matter is significantly related to a matter in which the [lawyer] represented the former client." 299 Or at 427.

All of those factors are present here. First, Winslow concedes that he represented Michael and Alice in the February 24, 1983, meeting. There is some ambiguity as to whether

---

[3] At all times relevant to this appeal, DR 5-105 provided, in pertinent part:

"Refusing to Accept or Continue Employment if the Interest of Another Client May Impair the Independent Professional Judgment of the Lawyer.

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment * * *.

"(B) A lawyer shall not continue employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

he also represented plaintiff or CPI. In any event, however, he clearly had a lawyer-client relationship with Alice when the transaction took place. *See In re Brandsness, supra,* 299 Or at 428. Representing plaintiff in an action against Alice obviously would place Winslow in a position directly adverse to her. Moreover, the matter in which Winslow represented her—the transfer of assets and interest in CPI—is precisely the subject of plaintiff's present action. Under the circumstances, representing plaintiff in this action inevitably would require Winslow to advance interests adverse to those of Alice, his former client, with respect to the very matter in which he represented her.

Plaintiff asserts that, in preparing the documents, Winslow neither rendered legal advice nor was privy to any of defendants' confidences. Moreover, he argues, the circumstances surrounding the transfer demonstrate that Michael had no expectation that Winslow would withhold from him any information gained during the representation. He contends that, because Winslow acted as a mere "scrivener" in preparing the requested documents, no lawyer-client relationship between Winslow and Michael or Alice existed.

Plaintiff's argument misses the mark in two respects. First, Winslow prepared two deeds, two assignments of leases, bills of sale for two items of equipment owned by CPI and the paperwork necessary to transfer all of the CPI stock to Alice. Given the extent to which those documents affected the legal rights and obligations of the parties, it is inaccurate to describe Winslow's role as that of a mere "scrivener." Moreover, plaintiff's argument assumes that the only purpose served by the rule proscribing subsequent representation adverse to former clients is to protect the former clients' confidences. In fact, it both "protects client confidences from intentional or inadvertent disclosure and promotes the virtue of loyalty." *In re Brandsness, supra,* 299 Or at 432. Even if Winslow's representation of Alice did not provide him with confidential information whose use would be likely to inflict damage on her in plaintiff's action for conversion and duress, thereby creating an "information specific" conflict, it clearly would conflict with her interests in the matter in which he

earlier represented her, generating a "matter specific" conflict.[4] That is enough to disqualify him. *In re Brandsness, supra,* 299 Or at 430-31.

Affirmed.

---

[4] DR 5-105(G) defines "matter" broadly to include

"any proceeding, claim, controversy, transaction, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties."