Argued and submitted November 30, 2006, affirmed April 18, 2007

VAVROSKY MACCOLL OLSON BUSCH & PFEIFER PC,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT,
*Respondent.*

Employment Department
U02802; A129210

157 P3d 312

David L. Johnstone argued the cause for petitioner. With him on the briefs was VavRosky MacColl Olson PC.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

---

* Brewer, C. J., *vice* Linder, J.

**WOLLHEIM, J.**

Employer seeks review of a final order of the Employment Department (department) denying its request for relief from charges under ORS 657.471(5)(b) for unemployment benefits paid to its former employee. Employer assigns error to the administrative law judge's (ALJ) interpretation of ORS 657.471(5)(b). We affirm.

Employer is a law firm that employed claimant as an attorney from November 2002 through November 2004. During his employment, the attorney was diagnosed with bipolar disorder and manic depressive syndrome. Ultimately, his medical condition and the medication he took to treat it interfered with his ability to work. For that reason, employer discharged the attorney on November 30, 2004.

The attorney filed a claim for unemployment benefits and the department allowed his request. In an Administrative Decision granting unemployment benefits, the department made three findings of fact:

"1. Claimant was employed by VAVROSKY MACCOLL OLSON PC from November 1, 2002 to November 30, 2004.

"2. Claimant was discharged for not meeting the *employer's standards*.

"3. Claimant had a medical condition that prevented him from performing the *functions of the job*."

(Emphasis added.) Based on those findings, the department concluded that the attorney was discharged, but not for misconduct related to his work and, therefore, he was entitled to unemployment benefits.

The department mailed employer a Notice of Claim Determination granting the attorney unemployment benefits. In response, employer requested relief from the charges.[1] Specifically, employer argued that it discharged the attorney because he was "unable to satisfy a job prerequisite required

---

[1] Employer did not oppose the department's decision allowing the attorney to receive benefits. Instead, employer's only contention was that it should not be "charged" for those benefits.

by law," ORS 657.471(5)(b), and, therefore, employer should be relieved of the unemployment charges.

The department issued a decision denying employer's request for relief. The department reasoned that "Oregon Law provides that relief can only be granted in a discharge situation if the individual was disqualified from their most recent separation by a decision issued by the Employment Department which found that the individual had been discharged for misconduct connected with the work." Based on that erroneous interpretation of ORS 657.471(5)(b), the department denied employer's request for relief of charges, because its previous decision determined that the attorney "was discharged but not for misconduct in connection with the work." Employer appealed the department's decision and a contested-case hearing followed.

Subsequent to the hearing, the ALJ issued a final order denying employer's request for relief of charges. The ALJ made the following findings of fact, relevant to our determination:

"Claimant worked for Vavrosky Maccoll Olson Busch & Pfeifer PC, the employer, from November 1, 2002 until November 30, 2004. Claimant was hired as an attorney. Initially claimant was able to satisfy the requirements of his position but sometime later his medical condition started to interfere with his work. Claimant was diagnosed with a Bi-polar disorder. He was diagnosed as having manic depressive syndrome. He was undergoing therapy and took medication for his condition which interfered with his work. He was unable to focus and concentrate on legal tasks, unable to form lucid thoughts to analyze files and practice law, unable to maintain regular hours of employment and unable to keep track of his billable hours. Claimant was not disbarred but continued to hold his license to practice law while he was working for the employer. However, the employer discharged him due to him being unable to satisfy the requirements of his position."

The ALJ concluded that ORS 657.471(5)(b) does not require a showing of employee misconduct to relieve an employer of unemployment charges; instead, it requires a showing that " 'the individual was unable to satisfy a *job prerequisite*

*required by law or administrative rule.'*" (Quoting ORS 657.471(5)(b); emphasis by ALJ.) The ALJ reasoned that

> "[c]laimant was hired as an attorney. The job prerequisite required by law or administrative rule is that an attorney be an active member of the State bar in which the attorney practices law. Claimant was an active member of the Oregon State Bar while he worked for the employer. If the claimant was not an active member of the State bar in which he practiced law, then ORS 657.471(5)(b) would allow the employer's account to be relieved of charges. Since there is no law or administrative rule that requires attorneys [to] practice law, the fact that claimant was unable to focus and concentrate on legal tasks, unable to form lucid thoughts to analyze files and practice law, unable to maintain regular hours of employment and unable to keep track of his billable hours does not mean he was unable to satisfy a job prerequisite. The only prerequisite was that he be an active member of the State bar in which he practiced law and claimant satisfied that requirement. Thus, the employer's account can not be relieved of charges."

Employer petitioned this court for judicial review of the final order, contending that the ALJ misinterpreted ORS 657.471(5)(b) when it concluded that the "job prerequisite required by law or administrative rule" for attorneys is active membership in the Oregon State Bar (Bar). On review, employer contends that the "job prerequisite[s] required by law or administrative rule" also include compliance with the rules of professional conduct.[2] It argues that the ALJ's findings indicate that the attorney was unable to comply with the rules of professional conduct and therefore it is entitled to relief of charges under ORS 657.471(5)(b).[3]

---

[2] The Oregon Code of Professional Responsibility, which was effective during the attorney's employment, was replaced in January 2005 by the Oregon Rules of Professional Conduct. We refer collectively to the Oregon Code of Professional Responsibility and the Oregon Rules of Professional Conduct as the "rules of professional conduct."

[3] Specifically, employer contends that the ALJ's findings indicate that the attorney's medical condition rendered him unable to comply with the following Code of Professional Responsibility Disciplinary Rules (DR): DR 2-110(B)(3) (regarding a lawyer's duty to withdraw from representation if the lawyer's mental or physical condition renders it unreasonably difficult to carry out the representation); DR 2-106(A) (regarding a lawyer's duty to not charge or collect a clearly excessive fee); and DR 6-101(A) (regarding a lawyer's duty to provide competent representation).

The department contends that the ALJ correctly interpreted ORS 657.471(5)(b) and appropriately concluded that the "job prerequisite required by law or administrative rule" for attorneys is active membership in the Bar. The department contends that because the attorney satisfied that prerequisite, employer is not entitled to relief of charges.

We review the ALJ's interpretation of ORS 657.471(5)(b) and her conclusion that "[t]he job prerequisite required by law or administrative rule is that an attorney be an active member of the State bar in which the attorney practices law" for errors of law. *See* ORS 183.482(8)(a); *Employment Dept. v. Clark*, 187 Or App 431, 434, 67 P3d 991 (2003).

ORS 657.471 provides, in part:

"(1)   Subject to the provisions of subsections (2) to (7) and (10) of this section, benefits paid to an eligible individual shall be charged to each of the individual's employers during the base year in the same proportion that the wages paid by each employer to the individual during the base year bear to the wages paid by all employers to that individual during that year.

"* * * * *

"(5)   Benefits paid without any disqualification to an individual shall not be charged to an employer of the individual for the immediate period of unemployment when:

"* * * * *

"(b)   The employer discharged the individual because the individual was *unable to satisfy a job prerequisite required by law or administrative rule.*"

(Emphasis added.)

We must determine whether the ALJ erred, as a matter of law, in interpreting ORS 657.471(5)(b). The standard of review that applies to an agency's interpretation of a statute depends on whether the statutory language at issue is an exact term, an inexact term, or a delegative term. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980). In this case, the disputed statutory language, "job prerequisite required by law or administrative rule," is an inexact term which requires the agency, and the

court, to determine the legislative intent of the language. *See id.* at 224 (defining inexact terms). An agency's interpretation of inexact terms are reviewed as a matter of law, *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 354-55, 15 P3d 29 (2000), in accordance with the interpretive principles of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Utilizing that methodology, we begin by analyzing the text of the statute in context and, if necessary, consider legislative history and maxims of statutory construction. *Id.*

We first consider the text of ORS 657.471(5)(b) and give the words their "plain, natural, and ordinary meaning." *Id.* at 611. The phrase "job prerequisite required by law or administrative rule" is not defined in ORS chapter 657. The ordinary meaning of "prerequisite" is "something that is required beforehand : something that is necessary to an end or to the carrying out of a function[.]" *Webster's Third New Int'l Dictionary* 1930 (unabridged ed 2002). Further, by its terms, ORS 657.471(5)(b) applies to only certain job prerequisites, that is, those "required by law or administrative rule." The context of ORS 657.471(5)(b) is also relevant to our textual analysis. ORS 657.471(1) provides the general rule that employers "shall be charged" for unemployment benefits paid to eligible former employees. The remaining provisions of ORS 657.471, including ORS 657.471(5)(b), carve out exceptions to that general rule. In other words, ORS 657.471 establishes a presumption in favor of charging employers, subject only to limited exceptions.

The meaning of "job prerequisite required by law or administrative rule" as used in ORS 657.471(5)(b) is subject to at least two plausible interpretations. Viewed narrowly, "job prerequisite[s] required by law or administrative rule" could mean only requirements that are necessary as a *preliminary step* to performing a particular job and compliance therewith is readily ascertainable. The most obvious example of job prerequisites under that narrow definition are licensing requirements. In contrast, viewed broadly, "job prerequisite[s] required by law or administrative rule" could encompass a wider range of requirements including all the qualifications, duties, and conduct requirements that are related to a particular job and described by a statute or

administrative rule. We cannot discern which of those definitions the legislature intended from the text and context of ORS 657.471(5)(b). When statutory language has two or more plausible meanings in the context of the statutory scheme, it is ambiguous, *State v. Hval*, 174 Or App 164, 168, 25 P3d 958, *rev den*, 332 Or 559 (2001), and we consider the legislative history of the statute to ascertain the legislative intent. *PGE*, 317 Or at 611-12; *see also* ORS 174.020.

We turn to the legislative history of ORS 657.471(5)(b). In 1999, the legislature amended ORS 657.471(5)[4] by adding paragraph (5)(b) to the statute. Representative Jeff Kruse sponsored House Bill (HB) 2698 (1999), which proposed the amendment. In a House work session on HB 2698, Representative Kruse explained that ORS 657.471(5)(b) applies when an employee is "legitimately hired for a job and the rules subsequent to that job are changed by the state through either ORS or administrative rule." Tape Recording, House Committee on Business and Consumer Affairs, HB 2698, Mar 1, 1999, Tape 43, Side A (statement of Rep Jeff Kruse). Representative Kruse gave a hypothetical example, explaining that if, for instance, the state heightened the requirements for childcare providers and as a result a daycare facility discharged an employee who could not satisfy the heightened requirements, ORS 657.471(5)(b) would relieve the daycare provider from unemployment charges. *Id.* The legislators discussed another hypothetical example of the application of ORS 657.471(5)(b) in a situation where an employer discharged its employee, who was hired as a pilot, for losing his pilot's license. *Id.* (statement of Administrator Keith Putnam). Based on the intended application of the statute, Representative Kruse stated that ORS 657.471(5)(b) "basically says that an employer will not be held liable in their unemployment insurance for an action by the state." *Id.* (statement of Rep Jeff Kruse).

---

[4] *Former* ORS 657.471(5) (1997) provided:

"Benefits paid without any disqualification to an individual who has left work of an employer voluntarily for good cause not attributable to the employer shall not be charged to that employer for the immediate period of unemployment."

In a subsequent work session in the Senate Committee on Business and Consumer Affairs, the legislative coordinator for the department commented on HB 2698; she testified that ORS 657.471(5)(b) would have a minimal fiscal impact on the department, because it will "only apply to individuals who are discharged because state law or administrative rules *change*, making the individual legally unqualified for the job they were performing." Testimony, Senate Committee on Business and Consumer Affairs, HB 2698, May 10, 1999, Ex H (statement of Annette E. Talbott) (emphasis added). She explained the fiscal impact of HB 2698 on the department:

> "Based on the language of the bill and Representative Kruse's stated intent, it will only allow relief of an employer's account in very narrow and specific instances. Notably, the effect of any relief of charges provision is to spread the costs to the employer pool as opposed to a particular employer's account."

*Id.* In that work session, the legislators also discussed the specific factual incident that led to HB 2698. That situation involved the renewal of an adult foster home's license to operate. At the time of renewal, administrative rules required that caregivers in such facilities pass a criminal background check. *See* OAR 411-050-0440(1)(e) (1999). The rules also required that the foster home not hire, or retain in employment, caregivers who have been convicted of a disqualifying crime. *See* OAR 411-050-0415(15) (1999). While conducting the required criminal background checks the foster home learned that one of its current employees had been convicted of a disqualifying crime. Because the administrative rule precluded the facility from retaining the employee, it discharged the employee. Testimony, Senate Committee on Business and Consumer Affairs, HB 2698, May 10, 1999, Ex G (statement of Brent K. Boyter).[5]

The legislative history of ORS 657.471(5)(b) sheds some light on the inquiry here. It indicates that the legislature intended ORS 657.471(5)(b) to apply in a limited

---

[5] There is no indication in the legislative history regarding whether the adult foster home, in the specific instance leading to HB 2698, was charged for unemployment benefits in that situation.

context. Also, the legislative history suggests that ORS 657.471(5)(b) relieves an employer of charges when an employee's inability to comply with the legal requirements of a job is readily ascertainable. The readily ascertainable requirements contemplated by the legislature include losing a license to perform a job (in the pilot example), failing a background check (in the adult foster home example), and inability to meet heightened job requirements (in the daycare example). The legislative history supports a narrower construction of "job prerequisite required by law or administrative rule," but does not entirely remove all doubt. Because the legislative intent remains unclear after considering the text, context, and legislative history, we resort to general maxims of statutory construction to resolve the remaining uncertainty. *PGE*, 317 Or at 612.

█ █  One maxim of statutory construction instructs that, if no legislative history exists relating to a particular inquiry, the court will attempt to determine how the legislature would have intended the statute to be applied had it considered the issue. *Carlson v. Myers*, 327 Or 213, 225, 959 P2d 31 (1998). We apply that maxim here. We conclude that, had the legislature considered this issue, it would have intended that an employer be relieved of charges under ORS 657.471(5)(b) when it discharges an employee for being unable to satisfy a legal or administrative requirement that is a preliminary step to performing a particular job and compliance therewith is readily ascertainable. We reach that conclusion for several reasons.

First, because the legislature described ORS 657.471(5)(b) as applying in several narrow contexts, we conclude that, had the legislature considered this issue, it would have intended a narrower definition of "job prerequisite required by law or administrative rule," which restricts the definition to readily ascertainable requirements that are necessary before an employee can perform a particular job. To adopt the broader definition of "job prerequisite required by law or administrative rule" would significantly expand the impact of ORS 657.471(5)(b) and the duties of the department incident to that statute. If "job prerequisite[s] required by law or administrative rule" included all qualifications,

duties, and conduct requirements that are related to a particular job and described by statute or administrative rule, the department would be required to make fact-specific determinations to ascertain whether employees complied with the numerous requirements of the various professions. That is an expansive duty to impose on the department: In Title 52 of the Oregon Revised Statutes alone there are over 30 chapters devoted to different occupations and professions, each with its own respective requirements. In effect, the broader definition would require the department to conduct a case within a case to determine whether an employer is entitled to relief under ORS 657.471(5)(b). We do not think the legislature would have intended the department to conduct, in effect, regulatory proceedings in all the various professions so that it could determine whether an employee was unable to comply with the duties necessary to the job, especially in connection with job requirements that are loosely defined and subject to enforcement by the board governing a particular profession.

Second, the examples that the legislature contemplated suggest that the employee's inability to comply with a "job prerequisite required by law or administrative rule" must be readily ascertainable. In the pilot example that the legislature discussed, it was readily ascertainable whether the employee complied with the job prerequisites; the employee either retained his pilot's license or lost it. In the adult foster home example that the legislature discussed, it was readily ascertainable whether the employee complied with the job prerequisites; the caregiver either passed the criminal background check or did not. In those situations, the department was not required to determine the employee's ability to comply with a loosely defined job requirement; the ability to meet the requirement was readily ascertainable.

Third, it appears that by enacting ORS 657.471(5)(b), the legislature intended to relieve an employer of unemployment charges when it was unavoidable that the employer would have to discharge an employee who was legally unqualified for his or her job. Said another way, the employer did not have an option; it, in essence, was required to discharge the employee because the employee was not able to

satisfy a legal requirement. A narrower definition of "job pre-requisite required by law or administrative rule" meets that end and ensures that, in that situation, employers will be relieved of charges.

Lastly, the pilot example discussed by the legislature seems to imply that the pilot was unable to satisfy a "job prerequisite required by law or administrative rule" under ORS 657.471(5)(b) because the entity that issued the employee's license had revoked it. The key element contemplated by the legislature was that the employee lost his license. The legislature did not place any significance on the employee's conduct or the circumstances that led to the revocation of his license. That leads us to conclude that the legislature intended "job prerequisite required by law or administrative rule" to be interpreted narrowly. If the legislature intended a different meaning of "job prerequisite required by law or administrative rule"; it has the ability to fix the problem by amending the text of ORS 657.471(5)(b) to reflect its intent.

■ We now turn to the specific question presented by this case; namely, whether compliance with the rules of professional conduct is a "job prerequisite required by law or administrative rule" within the meaning of ORS 657.471(5)(b). Employer argues that compliance with the rules of professional conduct is also a "job prerequisite required by law or administrative rule," because it is essential to "an Oregon lawyer to carry out his or her continuing function." Employer asserts that compliance with the rules of professional conduct is "not something merely required beforehand, but required [by attorneys] at all times[.]"

The department responds that, for purposes of ORS 657.471(5)(b), compliance with the rules of professional conduct is not a "job prerequisite required by law or administrative rule" of attorneys, because attorneys are not required to comply with the rules of professional conduct *before* becoming a member of the Bar.

■ Of course, employer is correct that attorneys have a continuing obligation to comply with rules of professional conduct. However, we emphasize that the issue here is much

more limited: Did the legislature intend to relieve an employer from unemployment charges when the employer discharged an employee based on its perception that the employee was unable to comply with the rules of professional conduct, when neither the Bar nor the Supreme Court had made such a determination?

■ To determine the correctness of the parties' assertions, we turn to ORS chapter 9, which governs attorneys. ORS 9.160(1) provides:

> "Except as provided in this section, a person may not practice law or represent that person as qualified to practice law *unless that person is an active member of the Oregon State Bar.*"

(Emphasis added.) ORS 9.160(1) makes active membership in the Bar a job prerequisite to practicing law. Accordingly, an employer that discharged an employee for failing to retain active membership in the Bar would be entitled to relief of charges under ORS 657.471(5)(b).

ORS 9.490(1) grants the Bar authority to "formulate rules of professional conduct" for Bar members and the power to enforce those rules once they are adopted by the Supreme Court. The rules of professional conduct are "binding upon all members of the bar" and have the status of law in Oregon. ORS 9.490(1); *State ex rel Bryant v. Ellis*, 301 Or 633, 636, 724 P2d 811 (1986). The grounds for disbarment, suspension, and reprimand of Bar members are governed by ORS 9.527, which provides, in part:

> "The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:
>
> "* * * * *
>
> "(7)   The member has violated any of the provisions of the rules of professional conduct adopted pursuant to ORS 9.490."

Bar disciplinary proceedings are "sui generis and within the inherent power of the Supreme Court to control." ORS 9.529.

For the following reasons, we conclude that compliance with the rules of professional conduct does not constitute a "job prerequisite required by law or administrative rule" within the meaning of ORS 657.471(5)(b).

■■ First, a violation of the rules of professional conduct does not always result in disbarment or suspension of an attorney. ORS 9.527(7) allows the Supreme Court to suspend or reprimand attorneys for violating the rules of professional conduct. In the event that an attorney is reprimanded as a consequence for violating a rule of professional conduct, the attorney can continue to practice law. In addition, even if attorneys violate a rule of professional conduct, they are not disqualified from practicing law unless or until their licenses to practice are either suspended or revoked.

■■ Second, the Supreme Court and the Bar have exclusive jurisdiction to enforce the rules of professional conduct. *See Kidney Association of Oregon v. Ferguson*, 315 Or 135, 141, 843 P2d 442 (1992); *Frost v. Lotspeich*, 175 Or App 163, 187, 30 P3d 1185 (2001). There must be a conclusive determination by either the Supreme Court or the Bar that the attorney is unable to comply, or failed to comply, with the rules of professional conduct and that the attorney's license to practice law was suspended or revoked as a result to entitle an employer to relief of unemployment charges under ORS 657.471(5)(b) for discharging an attorney on that basis.

In this case, neither the Supreme Court nor the Bar determined that the attorney was unable to comply with the rules of professional conduct during his employment. Nor did either impose any limitations on his ability to practice law while he was employed with employer. The attorney maintained active membership in the Bar throughout his tenure with employer. Accordingly, employer is not entitled to relief of charges pursuant to ORS 657.471(5)(b).

Affirmed.